RECORD NO. 13-1560

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

In re: CONSTRUCTION SUPERVISION SERVICES, INC.

*Debtor,*

-----------------------------------------

BRANCH BANKING & TRUST COMPANY,

*Creditor-Appellant,*

v.

CONSTRUCTION SUPERVISION SERVICES, INC.,

*Debtor-Appellee,*

HANSON AGGREGATES SOUTHEAST, LLC; COUCH OIL COMPANY OF DURHAM, INC.; R.W. MOORE EQUIPMENT CO.; HD SUPPLY WATERWORKS, LTD; WATER WORKS SUPPLY, INC.; MSC WATERWORKS, INC; GREGORY POOLE EQUIPMENT COMPANY; THOMAS CONCRETE OF CAROLINA, INC.; THE JOHN R. MCADAMS COMPANY, INCORPORATED,

*Creditors-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT RALEIGH

## RESPONSE BRIEF OF APPELLEES

William J. Wolf
Ethan J. Fleischer
BUGG & WOLF, PA
411 Andrews Road, Suite 170
Durham, North Carolina 27705
(919) 383-9431

Paul A. Sheridan
Nancy E. Hannah
HANNAH SHERIDAN LOUGHRIDGE
& COCHRAN, LLP
1011 Schaub Drive, Suite 104
Raleigh, North Carolina 27606
(919) 859-6840

*Counsel for Appellees*
*Hanson Aggregates Southeast, LLC,*
*Couch Oil Company of Durham, Inc.,*
*and R.W. Moore Equipment Co.*

*Counsel for Appellees*
*HD Supply Waterworks, LTD.,*
*Water Works Supply, Inc.,*
*Gregory Poole Equipment Company,*
*Thamas Concrete of Carolina, Inc.,*
*and The John R. McAdams Company, Inc.*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 13-1560        Caption: Branch Banking & Trust Company v. Construction Supervision Services,

Pursuant to FRAP 26.1 and Local Rule 26.1,

Thomas Concrete of Carolina, Inc.
(name of party/amicus)

who is _____ Creditors - Appellee _____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                         ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      Thomas Concrete Industries, Inc.; TCI Holding AB; Thomas Concrete Group, AB

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☑ YES ☐ NO
    If yes, identify any trustee and the members of any creditors' committee:

    Stephen L. Beaman
    Stephen L. Beaman, PLLC
    PO Box 1907
    Wilson, NC 27894

Signature: _Alan E Hamula_                    Date: _5-13-13_

Counsel for: _Thomas Concrete of Carolina, Inc._

## CERTIFICATE OF SERVICE
***************************

I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

William J. Wolf                             Stephen L. Beaman
Ethan J. Fleisher                           Stephen L. Beaman, PLLC
Bugg & Wolf, P.A.                           PO Box 1907
PO Box 2917                                 Wilson, NC 27894
Durham, NC 27515

William P. Janvier                          Nicholas C. Brown
Janvier Law Firm, PLLC                      Joseph H. Stallings
1101 Haynes Street, Ste. 102                Howard, Stallings, From & Hutson, P.A.
Raleigh, NC 27604                           PO Box 12347
                                            Raleigh, NC 27605

_Alan E Hamula_                             _5-13-13_
(signature)                                 (date)

07/19/2012                    - 2 -
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1560__    Caption: __Branch Banking & Trust Company - Appellant v. Construction Supervisio__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__HD Supply Waterworks, Ltd.__
(name of party/amicus)


who is _____Creditors - Appellee_____, makes the following disclosure:
        (appellant/appellee/amicus)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?    ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:
        HD Supply, Inc.


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:


- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☑YES ☐NO
    If yes, identify any trustee and the members of any creditors' committee:

    Stephen L. Beaman
    Stephen L. Beaman, PLLC
    PO Box 1907
    Wilson, NC 27894

Signature: _Nan E Hannah_    Date: _5-13-13_

Counsel for: _HD Supply Waterworks, Ltd_

## CERTIFICATE OF SERVICE
***************************

I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

William J. Wolf                    Stephen L. Beaman
Ethan J. Fleisher                  Stephen L. Beaman, PLLC
Bugg & Wolf, P.A.                  PO Box 1907
PO Box 2917                        Wilson, NC 27894
Durham, NC 27515

                                   Nicholas C. Brown
                                   Joseph H. Stallings
William P. Janvier                 Howard, Stallings, From & Hutson, P.A.
Janvier Law Firm, PLLC             PO Box 12347
1101 Haynes Street, Ste. 102       Raleigh, NC 27605
Raleigh, NC 27604

_Nan E Hannah_                     _5-13-13_
(signature)                        (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 13-1560        Caption: Branch Banking & Trust Company - Appellant v. Construction Supervisio

Pursuant to FRAP 26.1 and Local Rule 26.1,

The John R. McAdams Company, Incorporated
(name of party/amicus)

who is        Creditors - Appellee        , makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:


5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:


6.  Does this case arise out of a bankruptcy proceeding?  ☑YES ☐NO
    If yes, identify any trustee and the members of any creditors' committee:

    Stephen L. Beaman
    Stephen L. Beaman, PLLC
    PO Box 1907
    Wilson, NC 27894


Signature: _/Nan E Hannah/_____     Date: _5-13-13_____

Counsel for: _The John R. McAdams Company, Incorporated_

# CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

William J. Wolf                     Stephen L. Beaman
Ethan J. Fleisher                   Stephen L. Beaman, PLLC
Bugg & Wolf, P.A.                   PO Box 1907
PO Box 2917                         Wilson, NC 27894
Durham, NC 27515
                                    Nicholas C. Brown
William P. Janvier                  Joseph H. Stallings
Janvier Law Firm, PLLC              Howard, Stallings, From & Hutson, P.A.
1101 Haynes Street, Ste. 102        PO Box 12347
Raleigh, NC 27604                   Raleigh, NC 27605


_/Nan E Hannah/_____          _5-13-13_____
        (signature)                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1560__    Caption: __Branch Banking & Trust Company - Appellant v. Construction Supervisio__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Water Works Supply, Inc.__
(name of party/amicus)

_____

who is ____Creditors - Appellee____, makes the following disclosure:
(appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?  ☐ YES ☑ NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
       If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☑ YES ☐ NO
      If yes, identify any trustee and the members of any creditors' committee:

      Stephen L. Beaman
      Stephen L. Beaman, PLLC
      PO Box 1907
      Wilson, NC 27894

Signature: _Nan E Hannah_                    Date: _5-13-13_

Counsel for: _Water Works Supply, Inc._

## CERTIFICATE OF SERVICE
*************************

I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

William J. Wolf                      Stephen L. Beaman
Ethan J. Fleisher                    Stephen L. Beaman, PLLC
Bugg & Wolf, P.A.                    PO Box 1907
PO Box 2917                          Wilson, NC 27894
Durham, NC 27515
                                     Nicholas C. Brown
                                     Joseph H. Stallings
William P. Janvier                   Howard, Stallings, From & Hutson, P.A.
Janvier Law Firm, PLLC               PO Box 12347
1101 Haynes Street, Ste. 102         Raleigh, NC 27605
Raleigh, NC 27604

_Nan E Hannah_                       _5-13-13_
(signature)                          (date)

07/19/2012                    - 2 -
SCC

### UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
### DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 13-1560          Caption: Branch Banking & Trust Company - Appellant v. Construction Supervisio

Pursuant to FRAP 26.1 and Local Rule 26.1,

Gregory Poole Equipment Company
(name of party/amicus)

_____

who is _____ Creditors - Appellee _____, makes the following disclosure:
          (appellant/appellee/amicus)

1.   Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?  ☑ YES ☐ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      Panther Summit Industries, Inc.

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
     If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☑YES ☐NO
    If yes, identify any trustee and the members of any creditors' committee:

    Stephen L. Beaman
    Stephen L. Beaman, PLLC
    PO Box 1907
    Wilson, NC 27894

Signature: _Nan E Hannah_                     Date: _5-13-13_

Counsel for: _Gregory Poole Equipment Company_

## CERTIFICATE OF SERVICE
***************************

I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

William J. Wolf                          Stephen L. Beaman
Ethan J. Fleisher                        Stephen L. Beaman, PLLC
Bugg & Wolf, P.A.                        PO Box 1907
PO Box 2917                              Wilson, NC 27894
Durham, NC 27515
                                         Nicholas C. Brown
William P. Janvier                       Joseph H. Stallings
Janvier Law Firm, PLLC                   Howard, Stallings, From & Hutson, P.A.
1101 Haynes Street, Ste. 102             PO Box 12347
Raleigh, NC 27604                        Raleigh, NC 27605

_Nan E Hannah_                           _5-13-13_
(signature)                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No.  13-1560        Caption:  BB&T v. Construction Supervision Services, Inc. et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Couch Oil Company of Durham, Inc.
(name of party/amicus)


who is _____ Appellee _____, makes the following disclosure:
        (appellant/appellee/amicus)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                        ☐ YES ☑ NO
      If yes, identify all such owners:


- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☑ YES ☐ NO
If yes, identify any trustee and the members of any creditors' committee:
Stephen L. Beaman, Chapter 7 Trustee

Signature: /s/Ethan J. Fleischer                    Date:    May 13, 2013

Counsel for: Couch Oil Company of Durham, Inc.

## CERTIFICATE OF SERVICE
***************************
I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____                    _____
(signature)                                         (date)

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Joseph H. Stallings
Nicholas C. Brown
Howard, Stallings, From & Hutson, P.A.
P.O. Box 12347
Raleigh, NC 27605
*Attorneys for Branch Banking & Trust Company*

Nan E. Hannah
Paul Sheridan
Joseph A. Davies
Vann & Sheridan, LLP
P.O. Box 2445
Raleigh, NC 27602
*Attorneys for The John R. McAdams Company, Incorporated; Water Works Supply, Inc.; Gregory Poole Equipment Company; Thomas Concrete of Carolina, Inc.; HD Supply Waterworks, Ltd. d/b/a HD Supply Waterworks, L.P.*

William P. Janvier
Samantha Y. Moore
Janvier Law Firm, PLLC
1102 Haynes Street, Suite 102
Raleigh, NC 27604
*Attorneys for Debtor Construction Supervision Services, Inc.*

Stephen L. Beaman
Stephen L. Beaman, PLLC
P.O. Box 1907
Wilson, NC 27894
*Chapter 7 Trustee*

This the 13th day of May, 2013.

/s/Ethan J. Fleischer

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 13-1560            Caption: BB&T v. Construction Supervision Services, Inc et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Hanson Aggregates Southeast, LLC
(name of party/amicus)


who is _____Appellee_____, makes the following disclosure:
        (appellant/appellee/amicus)


1.    Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?                            ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      Hanson Aggregates, North America; Hanson PLC; HeidelbergCement


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☑ YES ☐ NO
      If yes, identify all such owners:
      HeidelbergCement is traded on one or more exchanges in Germany.


- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☑YES ☐NO
    If yes, identify any trustee and the members of any creditors' committee:
    Stephen L. Beaman, Chapter 7 Trustee

Signature: /s/Ethan J. Fleischer                    Date:    May 13, 2013

Counsel for: Hanson Aggregates Southeast, LLC

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____                    _____
         (signature)                                         (date)

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Joseph H. Stallings
Nicholas C. Brown
Howard, Stallings, From & Hutson, P.A.
P.O. Box 12347
Raleigh, NC 27605
*Attorneys for Branch Banking & Trust Company*

Nan E. Hannah
Paul Sheridan
Joseph A. Davies
Vann & Sheridan, LLP
P.O. Box 2445
Raleigh, NC 27602
*Attorneys for The John R. McAdams Company, Incorporated; Water Works Supply, Inc.; Gregory Poole Equipment Company; Thomas Concrete of Carolina, Inc.; HD Supply Waterworks, Ltd. d/b/a HD Supply Waterworks, L.P.*

William P. Janvier
Samantha Y. Moore
Janvier Law Firm, PLLC
1102 Haynes Street, Suite 102
Raleigh, NC 27604
*Attorneys for Debtor Construction Supervision Services, Inc.*

Stephen L. Beaman
Stephen L. Beaman, PLLC
P.O. Box 1907
Wilson, NC 27894
*Chapter 7 Trustee*

This the 13th day of May, 2013.

/s/Ethan J. Fleischer

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1560__         Caption: __BB&T v. Construction Supervision Services, Inc. et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__R.W. Moore Equipment Co.__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
         (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☑ YES ☐ NO
    If yes, identify any trustee and the members of any creditors' committee:
    Stephen L. Beaman, Chapter 7 Trustee

Signature: /s/Ethan J. Fleischer _____    Date: __May 13, 2013__

Counsel for: R.W. Moore Equipment Co. _____

# CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____              _____
      (signature)                              (date)

# CERTIFICATE OF SERVICE

I certify that the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Joseph H. Stallings
Nicholas C. Brown
Howard, Stallings, From & Hutson, P.A.
P.O. Box 12347
Raleigh, NC 27605
*Attorneys for Branch Banking & Trust Company*

Nan E. Hannah
Paul Sheridan
Joseph A. Davies
Vann & Sheridan, LLP
P.O. Box 2445
Raleigh, NC 27602
*Attorneys for The John R. McAdams Company, Incorporated; Water Works Supply, Inc.; Gregory Poole Equipment Company; Thomas Concrete of Carolina, Inc.; HD Supply Waterworks, Ltd. d/b/a HD Supply Waterworks, L.P.*

William P. Janvier
Samantha Y. Moore
Janvier Law Firm, PLLC
1102 Haynes Street, Suite 102
Raleigh, NC 27604
*Attorneys for Debtor Construction Supervision Services, Inc.*

Stephen L. Beaman
Stephen L. Beaman, PLLC
P.O. Box 1907
Wilson, NC 27894
*Chapter 7 Trustee*

This the 13th day of May, 2013.

/s/Ethan J. Fleischer

## TABLE OF CONTENTS

Page

CORPORATE DISCLOSURES

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF THE ISSUE .............................................................1

STATEMENT OF THE FACTS ...........................................................1

SUMMARY OF THE ARGUMENT .....................................................2

ARGUMENT .......................................................................................5

I.    The post-petition service of a claim of lien upon funds under
      Chapter 44A falls within the exception to the automatic stay set
      forth in 11 U.S.C. § 362(b)(3) ................................................5

      A.    Automatic Stay and Exceptions ...................................5

      B.    An Overview of North Carolina Lien Law ..................8

            1.    Lien on Real Property ......................................8

            2.    Lien upon Funds ..............................................9

            3.    Subrogated Lien on Real Property..................11

      C.    The proper test to determine whether an "interest in
            property" exists under 11 U.S.C. § 362(b)(3)..........12

      D.    Entitlement to a super-priority lien is an "interest in
            property" under 11 U.S.C. § 546(b) and 11 U.S.C. §
            546(b)(3) ...................................................................15

      E.    *Shearin, Harrelson*, and *Mammoth* were wrongly decided
            and BB&T's reliance on those decisions is misplaced.............19

i

1.    An analogy that illustrates the error of the *Harrelson, Mammoth* and *Shearin* rulings ................22

F.    *United Rentals* and *Precision Walls* are not relevant and do not support BB&T's position ................................................25

II.    The post-petition assertion by subrogation of lien rights against real property pursuant to Chapter 44A of the North Carolina General Statutes asserting a Lien against Real property not owned by the estate does not constitute a violation of the automatic stay and is subject to an exception to the automatic stay pursuant to 11 U.LS.C. § 362(b)(3) ............................................28

III.    Public policy weighs in favor of affirming the District Court's ruling ................................................................................33

CONCLUSION ..............................................................................36

CERTIFICATE OF COMPLIANCE ........................................................39

CERTIFICATE OF SERVICE ...............................................................40

ADDENDUM ...................................................................................41

ii

# TABLE OF AUTHORITIES

## CASES

*229 Main St. Ltd. Partnership v. Mass. EPA (In re 229 Main St.)*,
   262 F.3d 1 (1st Cir. 2001)......................................................5, 6, 14, 16, 31, 32

*In re AR Accessories Group, Inc.*,
   345 F.3d 454 (7th Cir. 2003) ...................................................................14, 31

*Butner v. U.S.*,
   440 U.S. 48, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979) ......................................15

*Caldwell's Well Drilling, Inc. v. Moore*,
   79 N.C. App. 730, 340 S.E.2d 518 (1986) ......................................................25

*Carolina Bldrs. Corp. v. Howard-Veasey Homes, Inc.*,
   72 N.C. App. 224, 324 S.E.2d 626 (1985) ........................................................8

*Concrete Structures, Inc. v. Tidewater Crane and Rigging Co. (In re
   Concrete Structures, Inc.)*, 261 B.R. 627 (E.D. Va. 2001) .....................17, 20

*Contract Steel Sales, Inc. v. Freedom Construction Co.*,
   321 N.C. 215, 362 S.E.2d 547 (1987) ..........................................10, 11, 16, 37

*Drake v. Franklin Equip. Co. (In re Franklin Equip. Co.)*,
   418 B.R. 176 (Bankr. E.D. Va. 2009) .............................................................15

*Electric Supply Co. of Durham, Inc. v. Swain Electrical Co., Inc.*,
   328 N.C. 651, 403 S.E.2d 291 (1991) ............................................6, 11, 18, 28

*Ferguson Enterprises, Inc. of Virginia v. Mammoth Grading, Inc.*,
   No. 5:10-CV-316-H (E.D.N.C. Feb. 23, 2012) ........................................17, 20

*In re Fiorillo & Co.*,
   19 B.R. 21 (Bankr. S.D.N.Y. 1982)................................................................24

*In re Harrelson Utilities, Inc.*,
   51 Bankr. Ct. Dec. 261, 2009 WL 23825870,   (Bankr. E.D.N.C. Jul.
   30, 2009) ...........................................................................................16, 20, 22

*In re Mammoth Grading, Inc.*,
   *Case No. 09-01286-8-ATS*, 2009 Bankr. LEXIS 5564 (Bankr. E.D.N.C.
   Aug. 24, 2009) ...................................................................................19, 22

*Lincoln Sav. Bank, FSB v. Suffolk County Treasurer (In re Parr Meadows*
   *Racing Association*, 880 F.2d 1540 (2nd Cir. 989),
   *cert. denied,* 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990) ......14, 29

*In re Lionel Corp.*,
   29 F.3d 88 (2d Cir. 1994) .............................................................................31

*Lowe's v. Quigley*,
   46 N.C. App. 770, 266 S.E.2d 378 (1980) ....................................................26

*Maryland National Bank v. Baltimore (In re Maryland Glass Corp.)*,
   723 F.2d 1138 (4th Cir. 1983) ........................... 7, 12, 13, 15, 20-22, 32, 34, 35

*In re Microfab, Inc.*,
   105 B.R. 152 (Bankr. D. Mass. 1989) ..................................................6, 14, 17

*In re Perona Brothers Inc.*,
   186 B.R. 833 (D.N.J. 1995) .....................................................................32, 33

*Poly Industries, Inc. v. Mozley*,
   362 F.2d 453 (9th Cir. 1966), *cert. denied,* 385 U.S. 958, 87 S.Ct. 393,
   17 L.Ed.2d 304 (1966)............................................................................14, 29

*Precision Walls v. Crampton*,
   196 B.R. 299 (Bankr. E.D.N.C. 1996)................................................24, 26, 27

*In re Shearin Family Investments, LLC*,
   Case No. 08-07082-8-JRL, 2009 Bankr. LEXIS 2170 (Bankr. E.D.N.C.
   April 17, 2009)......................................................................................20, 22

*United Rentals v. Angell*,
   592 F.3d 525 (4th Cir. 2010), *cert denied,* 131 S.Ct. 121
   (2010)...........................................................................................24, 25, 26, 27

# STATUTES

11 U.S.C. § 362 ..................................................................................26, 32
11 U.S.C. § 362(a)(4) ...............................................................................5, 37
11 U.S.C. § 362(b)(3) ............................................................................*passim*
11 U.S.C. § 544 ...........................................................................................3
11 U.S.C. § 544(a)(1) ................................................................................7, 24
11 U.S.C. § 545 ...........................................................................................3
11 U.S.C. § 546(b) ...............................................................................passim
11 U.S.C. § 546(b)(1) ................................................................................12
11 U.S.C. § 546(b)(1)(A) ............................................................5, 6, 14, 31
11 U.S.C. § 549 ...........................................................................................3


N.C. Gen. Stat. § 25-9-301 ..........................................................................23
N.C. Gen. Stat. § 25- 9-324 .........................................................................22
N.C. Gen. Stat. § 44A ...............................................................15, 16, 27, 37
N.C. Gen. Stat. § 44A-7 ..............................................................................11
N.C. Gen. Stat. § 44A-7(3) ...........................................................................9
N.C. Gen. Stat. § 44A-7 – 44A-16 ..............................................................9
N.C. Gen. Stat. § 44A-8 .......................................................................9, 11, 31
N.C. Gen. Stat. § 44A-10 .............................................................................9
N.C. Gen. Stat. § 44A-12.1(c) ......................................................................27
N.C. Gen. Stat. § 44A-17 .............................................................................10
N.C. Gen. Stat. § 44A-17(2), (4), (5) .............................................................1
N.C. Gen. Stat. § 44A-18 .........................................................................9, 21
N.C. Gen. Stat. § 44A-18(1) .........................................................................10
N.C. Gen. Stat. § 44A-18(2) .........................................................................10
N.C. Gen. Stat. § 44A-18(3) .........................................................................10
N.C. Gen. Stat. § 44A-18(5) .........................................................................21
N.C. Gen. Stat. § 44A-18(6) .....................................................................17, 21
N.C. Gen. Stat. § 44A-19 .....................................................................910, 17, 30
N.C. Gen. Stat. § 44A-22 ...........................................................................2, 3
N.C. Gen. Stat. § 44A-23 ...............................................................11, 28, 30, 31
N.C. Gen. Stat. § 44A-23(a) .........................................................................11


Uniform Commercial Code § 9-301(2) .........................................................23

# CONSTITUTION

N.C. Const., Art. X, § 3 .......................................................................8, 36

# UNRECOGNIZED

*Black's Law Dictionary* (5th Ed. 1979) ............................................19, 27

*5 Collier on Bankruptcy* ¶ 546.03[2][a].................................................14

4 L. King, M. Cook, R. D'Agostino & K. Klee, *Collier on Bankruptcy*, para. 546.03 [2] (15th Ed. 1983) ...............................................................7

2012 N.C. Sess. Laws 75 ............................................................................8

H.R. Rep. No. 595, 95th Cong., 1st Sess. 371, *reprinted in* 1978 U.S. Code Cong. & Admin. News 6327................................................................24, 29

S. Rep. No. 989, 95th Cong., 2d Sess. 86, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5872) ...............................................................24, 29

## STATEMENT OF THE ISSUE

Are the super-priority lien rights on funds granted to Subcontractors[1] under the Constitution and statutes of North Carolina an "interest in property" preserved by the exception to the automatic bankruptcy stay set out in 11 U.S.C. §362(b)(3)?

## STATEMENT OF FACTS

Branch Banking & Trust Company (hereinafter "BB&T") loaned money to Construction Supervision Services, Inc. (hereinafter "Debtor") which was in the business of constructing underground utilities and other improvements to real property. *(J.A. at 158, 164, 173-175).* BB&T took a security interest in Debtor's accounts receivable. *(J.A. at 306).*

Consistent with the traditional "pay when paid" procedure that has been the norm for the construction industry for decades, (e.g. contractor performs work, owner pays for work and contractor, thereafter, pays its suppliers and lower tier contractors) Appellees (hereinafter "Lien Claimants") also extended credit to Debtor by delivering to Debtor the materials and equipment needed by Debtor to perform its work on various construction projects in North Carolina and then

---

[1] North Carolina's lien statutes define anyone who contracts to provide labor, materials or rental equipment to a North Carolina construction project as a "subcontractor." *See* N.C. Gen. Stat. § 44A-17 (2), (4) & (5) and § 44A-18. As used herein, "Subcontractor" means anyone who has provided labor, materials or rental equipment to the Debtor.

1

waiting for the payment for those materials to be made by the Owner and others down the contract chain.

Under existing North Carolina lien laws and North Carolina's commercial code, the Lien Claimants have a first priority security interest in the receivables from the projects that Lien Claimants provided the materials and equipment for, and BB&T has a second priority security interest in those same receivables. N.C. Gen. Stat. § 44A-22 (2011). BB&T also has first mortgages on several parcels of property and it also retains a first priority status on all other receivables of the debtor other than the receivables that were generated by the Lien Claimants' materials and equipment. *(J.A. at 173)*

## <u>SUMMARY OF ARGUMENT</u>

If BB&T is permitted to use the automatic stay in favor of the Debtor as a tool to prevent the Lien Claimants from asserting their lien rights granted by the State of North Carolina, then BB&T will gain a windfall by moving from second position to first position on the receivables earned as a result of the materials and equipment provided by Lien Claimants to the Debtor. This windfall is the type of injustice the North Carolina constitution and statutes are designed to prevent. The Bankruptcy Court for the Eastern District of North Carolina as well as the District Court for the Eastern District of North Carolina have both carefully analyzed applicable statutes and controlling precedent and concluded that the post-petition

2

filing of a claim of lien upon funds is permitted as an exception to the automatic stay set out in 11 U.S.C. § 362(b)(3).  *(J.A. at 258, 275, 352).*

The super-priority lien rights on funds afforded subcontractors under North Carolina law are an "interest in property" because, once perfected, such a lien has "priority over all other interests or claims theretofore or thereafter created or suffered in the funds by the person against whose interest the lien upon funds is asserted, including, but not limited to, liens arising from garnishment, attachment, levy, judgment, assignments, security interests, and any other type of transfer, whether voluntary or involuntary."  N. C. Gen. Stat. 44A-22 (2011).

11 U.S.C. § 362(b)(3) explicitly allows a Subcontractor to proceed with "... any act to perfect, or to maintain or continue the perfection of, **an interest in property** to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title..."  (emphasis added).  11 U.S.C. § 546(b) in turn provides:  "the rights and powers of a trustee under section 544, 545, and 549 of this title are subject to any generally applicable law that - (a) permits perfection of an interest in property to be **effective against an entity that acquires rights in such property before the date of perfection…**" (emphasis added).

The combination of these statutory provisions sets forth a clear and objective federal statutory standard that was properly applied by the Bankruptcy Court and District Court to determine that the inchoate lien rights belonging to

Subcontractors are "an interest in property" as used in 11 U.S.C. § 362(b)(3). This is a pass or fail test. If the inchoate unperfected lien rights are, upon perfection, effective against an entity that acquires rights in such property before the date of perfection (e.g. a hypothetical *bona fide* purchaser for value), those rights pass the test and are "an interest in property" and within the exception to the automatic stay afforded by 11 U.S.C. § 362(b)(3). If those inchoate unperfected lien rights, upon perfection, would **not** be effective over an intervening *bona fide* purchaser for value, then they would fail this federally mandated test and not be deemed "an interest in property" as used in 11 U.S.C. § 362(b)(3). The proper analysis focuses on **whom** a perfected claim of lien on funds is effective against, not **when** the perfection occurs or becomes effective.

Because the super-priority lien rights of North Carolina subcontractors in the funds due to the Debtor are effective against the rights of an entity that acquires rights in the funds before the date of perfection, the Lien Claimants have an "interest in property" that they are entitled to protect through the post-petition perfection of their lien on those funds.

## ARGUMENT

I.  **The post-petition service of a claim of lien upon funds under Chapter 44A falls within the exception to the automatic stay set forth in 11 U.S.C. § 362(b)(3).**

### A.  Automatic Stay and Exceptions.

In order to understand the issue presented, it is first important to understand the intersection of the United States Bankruptcy Code (the "Code") and North Carolina lien law that occurs when a party in the contract chain for a construction project, other than the owner, files a petition seeking the protection of the United States Bankruptcy Court. Once a bankruptcy petition is filed, an automatic stay is invoked preventing "any act to create, perfect, or enforce any lien against property of the estate[.]" 11 U.S.C. § 362(a)(4). However, the stay is not absolute. Congress incorporated exceptions to the stay, including an exception that allows "any act to perfect, or to maintain or continue the perfection of, an *interest in property* to the extent that the trustee's rights and powers are subject to such perfection under [11 U.S.C. § 546(b).]" 11 U.S.C. § 362(b)(3) (emphasis added). Section 546(b) places several limitations on the trustee's powers, including those powers that "are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection[.]" 11 U.S.C. § 546(b)(1)(A). *229 Main St. Ltd. P'ship v. Mass. EPA (In re 229 Main St.)*, 262 F.3d 1, 4 (1st Cir. 2001). The

5

purpose of 11 U.S.C. § 546(b) is to prevent debtor abuse of the bankruptcy stay, by limiting the ability to avoid statutory liens by filing bankruptcy. *Id.* at 9. For the exception to apply: (1) there must be an "interest in property," and (2) the law must be a "generally applicable law." 11 U.S.C. § 546(b)(1)(A). In applying this two part test, most courts begin with the concept of a "generally applicable law." *See In re 229 Main St.,* 262 F.3d at 10; *In re Microfab, Inc.*, 105 B.R. 152, 156 (Bankr. D. Mass. 1989). The concept of general applicability requires that the state statutes being evaluated apply across the board as opposed to being designed strictly for cases in which a bankruptcy has intervened. *In re Microfab, Inc.*, 105 B.R. at 156. Therefore, the lien law meets the definition of a "generally applicable law" inasmuch as it may come into play on any construction project. The court in *Electric Supply Co. of Durham, Inc. v. Swain Electrical Co., Inc.* found that:

> An adequate lien is intended to foster the construction industry, which operates largely on credit. Suppliers, including architects and surveyors, among many others, provide labor and materials to contractors and subcontractors who perform their portion of the work on a project. Since the contractor or subcontractor is generally not paid until the job, or a portion of it, is completed . . . their suppliers extend labor and materials to them on credit. An adequate lien is necessary to encourage responsible extensions of credit, which are necessary to the health of the construction industry.

*Electric Supply Co. of Durham, Inc. v. Swain Electrical Co., Inc.,* 328 N.C. 651, 659, 403 S.E. 2d 291, 296 (1991). The lien law is a law of general applicability as envisioned by the Bankruptcy Code as it is intended to apply whether or not a

6

bankruptcy intervenes. Moreover, "[t]he intervention of a petition . . . should not cut off an interest holder's opportunity to perfect where the interest holder could have perfected against an entity subsequently acquiring rights in the property if bankruptcy had not intervened." *Maryland Nat'l Bank v. Baltimore (In re Maryland Glass Corp.)*, 723 F.2d 1138, 1141 (4th Cir. 1983), *quoting*, 4 L. King, M. Cook, R. D'Agostino & K. Klee, *Collier on Bankruptcy*, para. 546.03[2], at 546-8 (15th Ed. 1983).

The next prong requires an "interest in property." The exception to the stay allows "any act to perfect, or to maintain or continue the perfection of, an *interest in property*[.]" 11 U.S.C. § 362(b)(3) (emphasis added). Therefore, if a Subcontractor's right to perfect a super-priority lien is considered an "interest in property" under the § 546(b) exception, then the Subcontractor may perfect its claim of lien upon funds as an exception to the automatic bankruptcy stay. If on the other hand, the right to perfect a super-priority lien upon funds (which rights exist only in favor of Subcontractors who have supplied labor, materials or equipment to a construction project) is not an "interest in property" under § 546(b), then Subcontractors will be unable to perfect their lien upon funds after the automatic stay has been issued, and the opportunity to assert their lien upon funds will effectively have been taken from them through the mere filing of a bankruptcy

petition. The "interest in property" that Subcontractors are entitled to under North Carolina state law is discussed in detail below.

### B. An Overview of North Carolina Lien Law.

The purpose of the North Carolina lien law has long been "to protect the interest of the supplier in the materials it supplies; the materialman, rather than the mortgagee, should have the benefit of the materials that go into the property." *Carolina Bldrs. Corp. v. Howard-Veasey Homes, Inc.*, 72 N.C. App. 224, 229, 324 S.E.2d 626, 629 (1985). The framers of the North Carolina Constitution in 1868 first included a provision which remains today requiring that "[t]he General Assembly shall provide by proper legislation for giving to mechanics and laborers an adequate lien on the subject-matter of their labor." N.C. Const., Art. X, § 3. The mandated legislation is currently codified as Chapter 44A, Article 2[2] of the North Carolina General Statutes and contains three similar but distinct liens of which those in the construction industry may avail themselves.

### 1. Lien on Real Property.

The first type of lien is a direct lien on real property, which is available to a laborer or materialman who contracts directly with the owner of the real property

---

[2] Chapter 44A was amended by the 2012 Session of the North Carolina General Assembly. 2012 N.C. Sess. Laws 75. The relevant amendments became effective as of January 1, 2013. These amendments, among other things, were intended to reiterate that the lien rights of Subcontractors arise upon the furnishing of labor, materials or rental equipment rather than at the time of perfection of those lien rights. The 2012 amendments are not applicable to this appeal.

("Lien on Real Property"). N.C. Gen. Stat. § 44A-8. The Lien on Real Property is effective from the date of "first furnishing of labor or materials at the site of the improvement by the person claiming the claim of lien on real property." N.C. Gen. Stat. § 44A-10. Therefore, it is undisputed that a Lien on Real Property can be asserted after a bankruptcy petition has been filed. By statute, an "interest in property" is acquired at the time labor or materials are furnished to the project, and this type of lien falls under the 11 U.S.C. § 546(b) exception. A Lien on Real Property may be asserted by a contractor in privity of contract with the property owner, and sometimes, by subcontractors claiming such a lien through subrogation of the contractors' rights.

<strong>2.    Lien upon Funds.</strong>

The second type of lien, raised as the first issue on appeal by BB&T, is a lien upon the funds due pursuant to a contract ("Lien upon Funds"), which attaches as a lien on funds owed down the contract chain on a specific project. N.C. Gen. Stat. §§ 44A-18, 19. This lien arises out of a contract right, and creates an interest in the funds due down the contract chain. Definitions pertaining to this lien are important to the arguments herein. The "owner" is "a person who has an interest in the real property improved and for whom the improvement is made and who ordered the improvement made." N.C. Gen. Stat. § 44A-7(3). A "contractor" is someone "who contracts with the owner to improve the real property." N.C. Gen.

9

Stat. § 44A-17. A "first tier subcontractor" is one who contracts with a "contractor" and "is entitled to a lien upon funds that are owed to the contractor with whom the first tier subcontractor dealt and that arise out of the improvement on which the first tier subcontractor worked or furnished material." N.C. Gen. Stat. § 44A-18(1). A "second tier subcontractor" is one who contracts with a first tier subcontractor and is "entitled to a subrogated claim to the lien of the first tier subcontractor with whom it dealt." N.C. Gen. Stat. § 44A-18(2). A "third tier subcontractor" then is allowed to its claim against the funds due to the second tier subcontractor with which it dealt and by subrogation up the chain to the funds due down that chain. N.C. Gen. Stat. § 44A-18(3).

The interest in property created by the Lien upon Funds is *perfected* by giving notice in writing to everyone above in the lien chain (the "obligor") and is effective upon the obligor's receipt of the notice. N.C. Gen. Stat. § 44A-18(6). Therefore, the main distinction between the Lien on Real Property and Lien upon Funds is that the former is based upon an interest in real property created at the time labor, materials or equipment are provided, while the latter is based upon an interest in the monies owed as a result of the provision of labor, materials or equipment for a project. *See Contract Steel Sales, Inc. v. Freedom Constr. Co.*, 321 N.C. 215, 220, 362 S.E.2d 547, 551 (1987). Like the Lien on Real Property, North Carolina has historically treated the "interest in property" pertinent to a Lien

10

upon Funds as arising when a Subcontractor delivers materials, labor or equipment to the project. *Id.*

### 3.    Subrogated Lien on Real Property.

The third type of lien is a combination of the first two types of liens. This lien, known as a Subrogated Lien on Real Property or a Subcontractor's Lien, includes a Lien upon Funds which is effective up the lien chain and includes a subrogated right to a Lien on Real Property. N.C. Gen. Stat. § 44A-23. This lien provides a Subcontractor with the right to enforce the contractor's claim of Lien on Real Property set out in N.C. Gen. Stat. § 44A-8. To perfect this lien, the Subcontractor, must file a Claim of Lien on Real Property with its Notice of Claim of Lien upon Funds attached as an exhibit, and must do so in the same time frame and manner provided in N.C. Gen. Stat. § 44A-7 through 16. *See* N.C. Gen. Stat. § 44A-23(a) and (b).

It should be noted that the right to the Lien upon Funds and the right to the Lien on Real Property are separate and distinct lien rights. *See Swain,* 328 N.C. at 660, 403 S.E.2d at 297. Therefore, the Subrogated Lien on Real Property survives even where there is a break in the Lien upon Funds chain created by a higher tier having been paid in full, such that a subcontractor may maintain a Lien on Real Property to the extent of the funds remaining due and owing from the owner to the contractor.

11

**C.**   **T**he proper test to determine whether an "interest in property" exists under 11 U.S.C. § 362(b)(3).

Lien Claimants agree with BB&T that "[t]he crux of this appeal is whether the Subcontractors had an 'interest in property' of the estate on the Petition Date such that they are within the exception to the automatic stay provided in 11 U.S.C. § 363(b)(3), incorporating 11 U.S.C. § 546(b)(1)."  *(Appellant Br. at 16).*

After having summed up the ultimate issue in this appeal on page 16 of its brief, BB&T then waited until page 46 of its brief before it mentioned this Court's controlling authority setting forth the test that must be utilized to determine whether a Subcontractor's Lien upon Funds is an "interest in property."  The issue of whether an unfiled and unperfected lien for taxes was an "interest in property" was the focus of this Court's decision in *In re Maryland Glass Corp.*, 723 F.2d 1138 (4th Cir.1983).

In *In re Maryland Glass,* this Court repeatedly confirmed the proper inquiry is not *when* the security interest became perfected or enforceable, rather the proper inquiry is "what interest the [Subcontractor] held in [the right to payment of contract balances due the Debtor] before the petition in bankruptcy was filed, as well as the effect of that interest upon a hypothetical purchaser who might have acquired the [right to payment of contract balances due the Debtor] ... before the [Subcontractor's] interest was fully perfected and enforceable by virtue of a

12

statutory lien." *Id.* at 1142.

This Court also found it notable that: "Congress in enacting § 546(b) perceived that the mere intervention of a petition in bankruptcy should not be permitted to defeat what would otherwise be a valid security interest in property. If that interest awaits perfection, and if generally applicable state law permits that perfection to be good against an intervening purchaser, then the trustee should stand in no better shoes than such an intervening purchaser." *Id.* at 1143.

In the case at bar, the Lien Claimants all had a right to serve a notice of claim of lien upon funds pre-petition. The only condition to making such a notice is that they furnish labor, equipment or materials to the construction project described in the notice. N.C. Gen. Stat. § 44A-18(5).

The Bankruptcy Court in this case correctly applied and analyzed the effect and impact of *In re Maryland Glass*, and the District Court properly affirmed the Bankruptcy Court for the same reasons. *(J.A. at 270-71)*

The policies and legal analysis by this Court in *In re Maryland Glass* have also been recognized in other circuits. "Thus, simply stated, if a creditor possesses a prepetition interest in property, and state law establishes a time period for perfection of a lien based upon that interest, the 'lien does not lose its preferred standing by reason of the fact that it [is] not perfected until after the commencement of a bankruptcy so long as it is perfected within the time period

13

established by state law." *Lincoln Sav. Bank, FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Ass'n),* 880 F.2d 1540, 1546 (2nd Cir. 1989), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990) (*quoting Poly Industries, Inc. v. Mozley,* 362 F.2d 453, 457 (9th Cir. 1966), *cert. denied,* 385 U.S. 958, 87 S.Ct. 393, 17 L.Ed.2d 304 (1966)). The "gist of section 546(b)(1)(A) is that 'the filing of a bankruptcy petition does not prevent the holder of an interest in property from perfecting its interest if, absent the bankruptcy filing, the interest holder could have perfected its interest against an entity acquiring rights in the property before the date of perfection.' " *In re 229 Main St.,* 262 F.3d at 12 (*quoting* 5 *Collier on Bankruptcy* ¶ 546.03[2][a]) (an act that both creates and perfects in one fell swoop is a permissible act to perfect); *see also In re AR Accessories Group, Inc.* 345 F.3d 454, 457-58 (7th Cir. 2003) (where super-priority lien on debtor's property for unpaid wages took "effect" upon the Department of Labor filing a verified petition claiming the lien, the priority statute did not need to have relation back language or effect to permit perfection of the super-priority lien created thereby to be excepted from the automatic stay).

Other bankruptcy courts have also specifically held that post-petition acts which create and perfect a lien at the same time are permitted under 11 U.S.C. § 362(b)(3), as long as the lien is enforceable against intervening *bona fide* purchasers. *In re Microfab,* 105 B.R. at 160-61 (post-petition filing of

14

environmental superlien against the debtor's property fell within the exception to stay in 11 U.S.C. § 362(b)(3)).

Since the Lien Claimants' lien rights in the funds due the Debtor on the projects in question are also, upon perfection, entitled to super-priority over an intervening *bona fide* purchaser (or the competing security interest of BB&T[3]), the Lien Claimants are permitted to perfect their liens post-petition for the exact same reason the claimant in *In re Maryland Glass* prevailed.

**D.    Entitlement to a super-priority lien is an "interest in property" under 11 U.S.C. § 546(b) and 11 U.S.C. § 362(b)(3).**

The "interest in property" that subcontractors enjoy is an issue to be determined by state law.  *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *see also Drake v. Franklin Equip. Co. (In re Franklin Equip. Co.)*, 418 B.R. 176, 210-11 (Bankr. E.D. Va. 2009).  BB&T's fundamental error is asserting that only a fully perfected lien equates to an "interest in property."  BB&T argues that the Lien Claimants can only obtain an "interest in property" by a lien perfected pre-petition, but analysis of the statute and North Carolina law contradicts this view.  It is noteworthy that the word choice in 11 U.S.C. § 546(b) is "interest in property."  It is well-settled that the phrase "interest in property" is broad and includes more than a "lien."  *In re Maryland Glass Corp.*, 723 F.2d at 1141-42.

---

[3] As noted in footnote 5 of the Bankruptcy Court's opinion "BB&T admits its lien on accounts receivable would be inferior to a properly perfected lien on funds." *(J.A. at 272).*

The First Circuit concluded that "the term 'interest in property' is not synonymous with the term 'lien'" after studying the language of the statute. *In re 229 Main Street,* 262 F.3d at 5. Therefore, there is a distinction between when the "interest in property" begins, which creates the entitlement to a lien, and when the lien is properly perfected. "In construing materialmen's lien statutes, courts have recognized a distinction between the entitlement provisions on one hand and the perfection provisions on the other." *Contract Steel Sales,* 321 N.C. at 222, 362 S.E.2d at 551. The statute does not require the lien, whether upon funds or on real property, to be in existence for the exception to apply, as BB&T argues, but only an "interest in property," which is broader than a perfected lien.

North Carolina law has historically viewed an entitlement to all of the above listed liens as an "interest in property" under 11 U.S.C. § 546(b), and therefore has permitted such liens to be served and/or filed after the automatic stay. *See In re Harrelson Utilities, Inc.*, 51 Bankr. Ct. Dec. 261, 2009 WL 23825870, *6 (Bankr. E.D.N.C. Jul. 30, 2009) *("Harrelson").* The North Carolina Supreme Court has held that the interest in funds is created upon furnishing of materials, and perfected once all the requirements of N.C. Gen. Stat. § 44A are fulfilled. *See Contract Steel Sales*, 321 N.C. at 220, 362 S.E.2d at 550. The "interest in property" at issue in the instant case is the interest in the funds owed through the contract or funds owed down the lien chain from the owner. For the Lien Claimants, the "interest in

property" is created by performance of the contract – when they deliver materials or labor for the improvement of the property. All that remained was to execute the lien through perfection. *See Concrete Structures, Inc. v. Tidewater Crane and Rigging Co.* (*In re Concrete Structures, Inc.*), 261 B.R. 627, 632 (E.D. Va. 2001) (performance of contract creates inchoate lien, which is made choate by statute).

The North Carolina General Statutes provide that a lien upon funds "is *perfected* upon the giving of Notice of Claim of Lien upon Funds in writing to the obligor as provided in G.S. 44A-19 and shall be effective upon the obligor's receipt of the notice." N.C. Gen. Stat. § 44A-18(6) (emphasis added). "To *perfect* a lien or other security interest is to satisfy all the conditions necessary to make the lien effective against third parties and, in the case of a statutory, non-consensual lien, against the property owner." *In re Microfab*, 105 B.R. at 157 (emphasis added). Where, as here, a property interest is created by performance of the contract, and may later be perfected by the serving of a written notice, the automatic stay does not apply.

In its February 23, 2012 order, the District Court noted that the decisions in the 2009 bankruptcy cases "turned the construction industry's standard operating procedure on its head." *Ferguson Enterprises, Inc. of Virginia v. Mammoth Grading, Inc.*, No. 5:10-CV-316-H (E.D.N.C. Feb. 23, 2012) at 4. As the court in *Swain* noted, the construction industry is reliant upon the use of credit up and down

17

a lien chain. *Swain,* 328 N.C. at 659, 403 S.E.2d at 296. The presence of a lien right, whether on real property or funds, provides security for the extension of that credit as between subcontractors and suppliers while also permitting work to continue and money to flow in the form of periodic progress payments. The effect of a perfected lien upon funds is to freeze the flow of funds usually resulting in work stopping on projects; therefore, the inchoate right, that interest in property which exists but is not perfected, is the "credit" to which the *Swain* court referred. It is that which is essential to the smooth operation of a construction project. The perfection aspect is that which is available when a kink appears in the smooth operation such that subcontractors and suppliers need to enforce their existing right. Allowing the intervention of a bankruptcy to break the chain in a manner not in harmony with the constitutional mandate for an adequate lien or in an inequitable manner disrupting the purpose of the lien statutes creates a manifest injustice.

A Lien upon Funds by subcontractors and suppliers has long been treated in the same manner as a Lien on Real Property in that the "interest in property" arises upon furnishing of materials or labor, allowing subcontractors and suppliers to file claims for Lien upon Funds post-bankruptcy petition. It was not until 2009 that the three decisions from the Bankruptcy Court for the Eastern District of North Carolina drastically changed how the Bankruptcy Courts treated North Carolina

lien law, denying subcontractors and suppliers their longstanding rights. This has left the state of North Carolina lien law in limbo, as uncertainty permeates the construction industry.

### E. *Shearin*, *Harrelson*, and *Mammoth* were wrongly decided and BB&T's reliance on those decisions is misplaced.

BB&T and the court in *Harrelson* and *In re Mammoth Grading, Inc.*, Case No. 09-01286-8-ATS, 2009 Bankr. LEXIS 5564 (Bankr. E.D.N.C. Aug. 24, 2009) ("*Mammoth*") refer to the phrase "inchoate lien" in support of the theory that the 11 U.S.C. § 546(b) exception should not apply to a Lien upon Funds. *(Appellant Br. at 40-42)*. *Black's Law Dictionary* defines "inchoate" as "imperfect; partial; unfinished; *begun, but not completed*" and defines an "inchoate lien" as "*an interest in real estate* which is not a present interest, but which may ripen into a vested estate, if not barred, extinguished or divested." *Black's Law Dictionary*, p.686 (5th Ed. 1979) (emphasis added). Interestingly, BB&T uses this term to support the proposition that since a Lien upon Funds falls under the definition of an "inchoate lien," it is not an interest in property and therefore does not qualify under the 11 U.S.C. § 546(b) exception. However, the very definition of "inchoate" as "begun, but not completed" and "inchoate lien" as "an interest in real estate" demonstrates that an "interest in property" already exists, and is merely awaiting completion. Therefore, characterizing a Lien upon Funds as an "inchoate lien" supports the proposition that a Lien upon Funds is an "interest in property,"

19

and as a result falls under the 11 U.S.C. § 546(b) exception.  *See In re Concrete Structures*, 261 B.R. at 632.

   *Harrelson* also characterized a Lien upon Funds as "empty, imprecise, indeterminate and illusive . . . ."  *Harrelson, 2009 WL* at *5.  Comparing the Lien upon Funds to no more than the tax lien at issue in *In re Maryland Glass*, the *Harrelson* court concluded that the mere entitlement to a Lien upon Funds does not create an "interest in property" that would qualify under the 11 U.S.C. § 546(b) exception.  The key issue that the *In re Shearin Family Investments, LLC*, Case No. 08-07082-8-JRL, 2009 Bankr. LEXIS 2170 (Bankr. E.D.N.C. April 17, 2009) ("*Shearin*"), *Mammoth*, and *Harrelson* decisions fail to recognize is that the court in *In re Maryland Glass* upheld the tax lien, holding in part that, "if, as a consequence of bankruptcy of the borrower, the real estate taxes could be avoided, pure manna from heaven in the form of unanticipated and unmerited benefit would arise in the mortgagee's favor, and no Congressional objective would be served." *In re Maryland Glass Corp.,* 723 F.2d at 1146.  BB&T has recognized this issue and attempts to force the *In re Maryland Glass Corp.* decision  to fit its case by misconstruing the holding and claiming on page 46 of its brief : "the Court in *Maryland Glass* expressly narrows the scope of its holding to the municipal real estate tax liens. *Id.* at 1144."   Instead, what the court actually narrowed its holding to was the post-petition perfection of a "super-priority" lien that was effective

against intervening *bona fide* purchasers.  *Id*.  In so doing, this Court was reiterating that the proper test is not when the perfection occurs, but against whom the lien is effective after it is perfected.  Similar to the rationale preventing avoidance of real estate taxes in *In re Maryland Glass Corp.*, it is the Lien Claimants who possess the lien rights and have furnished materials and/or labor for the benefit of the projects at issue, and are similarly protected by establishing an interest in the property as of the time of first furnishing.  The North Carolina General Statutes support this assertion by stating that a first, second, or third tier lien claimant "shall be entitled to a lien upon funds that are owed to the contractor . . . and that arise out of the improvement on which the subcontractor worked or furnished materials."  N.C. Gen. Stat. § 44A-18.  "The liens upon funds granted under [§ 44A-18] shall secure amounts earned by the lien claimant as a result of having furnished labor, materials, or rental equipment at the site of the improvement under the contract to improve real property . . . whether or not such amounts are due and whether or not performance or delivery is complete."  N.C. Gen. Stat. § 44A-18(5).  The statute continues and provides that the Lien upon Funds is *perfected* by the giving of written notice and effective upon receipt of that notice by the obligor.  N.C. Gen. Stat. § 44A-18(6) (emphasis added).

BB&T's reliance on *Shearin, Harrelson,* and *Mammoth* is misplaced and those decisions were wrongly decided because they failed to properly apply the correct test as established by this Court in *In re Maryland Glass Corp.*

### 1.    **An analogy that illustrates the error of the *Harrelson, Mammoth* and *Shearin* rulings.**

The error made by the *Shearin*, *Mammoth*, and *Harrelson* courts is further elucidated by comparing the "super-priority" lien rights granted to North Carolina Subcontractors under North Carolina law, with the priority lien rights granted to creditors extending credit to debtors acquiring new equipment or goods under the Uniform Commercial Code.  *See* N.C. Gen. Stat. § 25- 9-324 "PRIORITY OF PURCHASE-MONEY SECURITY INTERESTS."  In affirming the Bankruptcy Court's Order in this case the District Court specifically relied on this parallel between a UCC financing statement and a notice of claim of lien upon funds.  *(J.A. at 356).*   Like the rights granted a subcontractor or material supplier under North Carolina's construction lien statutes, the Uniform Commercial Code contains provisions that allow a creditor extending purchase money financing to prevail over other creditors or intervening purchasers, as long as the creditor perfects its security interest within 20 days of delivering the purchased goods to the debtor. N.C. Gen. Stat. § 25- 9-324.

Like the Lien Claimants' "inchoate" lien rights in the case at bar, the UCC affords a creditor, providing purchase money financing to a debtor, special priority

treatment over other creditors. Similar to North Carolina's Lien upon Funds, a UCC purchase money creditor cannot prevail over intervening purchasers, or existing creditors claiming through a debtor, unless it first perfects its security interest - usually by filing a Uniform Commercial Code financing statement. *See Id.* and N.C. Gen. Stat. § 25-9-301.

Once a purchase money security interest is perfected, the UCC gives special benefits to the purchase money creditor. Specifically, a perfected purchase money security interest takes priority over competing interests in the same property, even if the other creditor claims under a previously-filed financing statement, perfecting a "blanket" security interest. In other words, a bank filing covering "all assets, whether currently owned by borrower or acquired after the date hereof" loses out to a properly-perfected purchase money security interest.

These UCC provisions were the genesis of the exception to the automatic stay set forth in 11 U.S.C. § 362(b)(3):

> The legislative history expands on the exception for delayed filing and notes that under the Uniform Commercial Code section 9-301(2) the perfection of a purchase-money security interest may relate back to defeat the rights of an earlier lien creditor whose interest arose between the time the security interest attached and the time of its perfection, if the purchase-money security interest was perfected within ten days. Thus, for example, suppose that on day one a purchase-money security interest is created and on day four a bankruptcy petition is filed, but perfection of the purchase-money interest is delayed until day eight (four days after the filing of the petition). The perfection would nonetheless serve to defeat a trustee in bankruptcy in his capacity as a hypothetical judicial lien creditor (11

23

U.S.C. s 544(a)(1) ) whose interest arose at the time of the filing of the petition. "The purpose of the subsection is to protect, in spite of the surprise intervention of bankruptcy petition, those whom State law protects by allowing them to perfect their liens or interests as of an effective date that is earlier than the date of perfection." H.R. No. 95-595, 95th Cong.1st Sess. (1977) 371; S.R. No. 95-989, 95th Cong.2d Sess. (1978) 86, U.S.Code Cong. & Admin.News 1978, p. 5787, 6327.

*In re Fiorillo & Co.,* 19 B.R. 21, 22-23 (Bankr. S.D.N.Y. 1982).

Like UCC purchase money creditors, North Carolina subcontractors and material suppliers are not deprived of their already existing, pre-petition, right to perfect their liens by the mere filing of a bankruptcy petition by a debtor. The public policy behind the stay exception set forth in 11 U.S.C. § 362(b)(3) is to preserve and allow the enforcement of generally applicable state law security interests. The time for enforcement of those state law security interests should not be, and is not determined by, when a debtor files for bankruptcy. Instead, the timing of the perfection need only be timely under state law to fall within the protections afforded a creditor under 11 U.S.C. § 362(b)(3). Consequently, BB&T's position contending that a bankruptcy petition effectively extinguishes subcontractors' and material suppliers' right to perfect a super-priority lien is contrary to the Bankruptcy Code and the public policies behind the Code.

### F.  *United Rentals* **and** *Precision Walls* **are not relevant and do not support BB&T's position.**

The decisions in *United Rentals v. Angell*, 592 F.3d 525 (4th Cir. 2010), *cert denied,* 131 S.Ct. 121 (2010) and *Precision Walls Inc. v. Crampton*, 196 B.R. 299

(E.D.N.C. 1996)*, cited by BB&T, have no bearing on the ultimate issue in this case because the subcontractors in those cases received payment for the money owed to them prior to perfecting their inchoate rights, making it improper for them to have thereafter attempted to perfect their interest.

BB&T argues that the Fourth Circuit case *United Rentals* supports its position. Lien Claimants contend that *United Rentals* further supports Lien Claimants' position. The *United Rentals* court determined that Chapter 44A initially grants a materialman "the right to file a mechanic's lien." *Id.* at 534. BB&T asserts in its brief that "the right to file a mechanic's lien is automatic upon the furnishing of labor or materials," and that "the lien itself is not effectuated until a claim of lien has been filed." *(Appellant Br. at 45).* The *United Rentals* court held that the subcontractor did not have a security interest "because it never filed the mechanic's lien claim necessary to obtain such an interest*." United Rentals*, 592 F.3d at 533. Lien Claimants agree with the facts, but not the conclusions drawn by BB&T.

In *United Rentals*, the subcontractor never filed or served a lien because it received payment, a payment which later turned out to have been made and received during the 90-day preference period. Having been paid, United Rentals did not perfect its lien and without the perfection, the court determined none of the defenses to a preference action were available to United Rentals. *See Caldwell's Well Drilling, Inc. v. Moore*, 79 N.C. App. 730, 732, 340 S.E.2d 518, 520 (1986);

25

*see also Lowe's v. Quigley*, 46 N.C. App. 770, 772, 266 S.E.2d 378, 379 (1980)

("There can be no lien in the absence of an underlying debt.").

In the present case, Lien Claimants perfected their lien rights, albeit post-petition, and maintain that the post-petition perfection is valid. *United Rentals* is not inconsistent with this proposition. The *United Rentals* court never held, as BB&T attempts to argue, that "the right to file a mechanic's lien" is not an "interest in property" under 11 U.S.C. § 362. Unlike *United Rentals*, the Lien Claimants in the present case have perfected their Claims of Liens Upon Funds for the monies that they had not been paid. Furthermore, the court characterized the subcontractor's interest as "inchoate." *United Rentals,* 592 F.3d at 530. As established above, a Subcontractor's inchoate lien upon funds is an "interest in property."

BB&T makes the same mistake in its analysis of *Precision Walls v. Crampton*, 196 B.R. 299 (Bankr. E.D.N.C. 1996), by treating an "interest in property" and a perfected "lien upon funds" as synonymous. The *Precision Walls* court held that a subcontractor has no secured claim when lien rights are not perfected. *Id.* at 303. The court did not, as BB&T suggests, hold that subcontractors have no "interest in property" that they could have perfected. Moreover, the primary issue in both *United Rentals* and *Precision Walls* was whether payments received by subcontractors violated the preferential payment

provisions of the United States Bankruptcy Code. This is an entirely different issue than the one currently before this Court.

In both *United Rentals* and *Precision Walls*, the subcontractors received payment for the money owed to them and they never perfected their inchoate rights. Once payment was received, there was no longer an underlying debt and the "interest in property" as defined by Chapter 44A was extinguished by the act of payment such that there were no longer lien rights to perfect. Note the definition of "inchoate" set out previously: "an interest in real estate which is not a present interest, but which may ripen into a vested estate, *if not barred, extinguished or divested*." *Black's Law Dictionary*, p.686 (5th Ed. 1979) (emphasis added). The subcontractors in *United Rentals* and *Precision Walls* had their inchoate interest in the property extinguished by the act of payment such that there were no rights to perfect. The North Carolina lien law provides that "[a]ny person who causes or attempts to cause a claim of lien on real property or other document to be filed, knowing that the filing is not authorized by statute . . . shall be guilty of a Class 1 misdemeanor." N.C. Gen. Stat. § 44A-12.1(c). Once a subcontractor receives payment extinguishing its debt for the project, any action to perfect its previously existing inchoate rights would be illegal. In the present case, the Lien Claimants Liens upon Funds only include what they have not been paid. As such, they have fully complied with the requirements of Chapter 44A and their Cliams of Liens

upon Funds were admittedly superior to BB&T's blanket lien on Debtor's receivables. The only issue before the Court in this appeal is whether or not an intervening bankruptcy petition prevents the perfection of the Lien Claimants' already existing rights to perfect their claims of lien upon the funds due the Debtor.

II.     **The post-petition assertion by subrogation of lien rights against real property pursuant to Chapter 44A of the North Carolina General Statutes asserting a Lien against Real Property not owned by the estate does not constitute a violation of the automatic stay and is subject to an exception to the automatic stay pursuant to 11 U.S.C. § 362(b)(3).**

The fundamental argument for this issue is the same as that previously set out. As noted above, the Subrogated Lien on Real Property created by § 44A-23 is a separate and distinct lien from the Lien upon Funds, but sounds out of the same statutory scheme. *See Swain,* 328 N.C. at 660, 403 S.E. 2d at 297. The two liens can be distinguished in that the Subrogated Lien on Real Property is proven by the attachment of the "Notice of Claim" of Lien upon Funds as an exhibit to the subcontractor's Claim of Lien on Real Property. N.C. Gen. Stat. § 44A-23. The attachment of the exhibit indicates to all parties the chain of parties through whom subrogation leads from the claimant to the owner. As determined by the court in *Swain*, a distinction between the Lien upon Funds and the Lien on Real Property is that where the chain of the Lien upon Funds can be broken by proof of payment in full to a higher tier, payment is not a defense to the Lien on Real Property. *See Swain,* 328 N.C. at 660, 403 S.E. 2d at 297.

28

The argument which BB&T makes is based upon the requirement that the Notice of Claim of Lien upon Funds be attached to the Claim of Lien on Real Property and that since the Lien upon Funds does not relate back in time, then there can be no exception to the automatic stay. *(Appellant Br. at 40-41).* But as outlined above, the Lien upon Funds arises out of an interest in property created at the time materials or labor was first furnished. "If a creditor possesses a prepetition interest in property, and the state law establishes a time period for perfection of a lien based upon that interest, the 'lien does not lose its preferred standing by reason of the fact that it [is] not perfected until after the commencement of bankruptcy' so long as it is perfected within the time period established by state law." *In re Parr Meadows* 880 F.2d at 1546 (*quoting Poly Industries, Inc. v. Mozley,* 362 F.2d 453, 457 (9th Cir. 1966), *cert. denied,* 385 U.S. 958, 87 S.Ct. 393, 17 L.Ed.2d 304 (1966)). "The relatively narrow purpose of this exception is to 'protect, in spite of the surprise intervention of [the] bankruptcy petition, those whom State law protects' by allowing them to perfect an interest they obtained before the bankruptcy proceeding began." *Id. (quoting* H.R. Rep. No. 595, 95th Cong., 1st Sess. 371, *reprinted in* 1978 U.S. Code Cong. & Admin. News 6327; S. Rep. No. 989, 95th Cong., 2d Sess. 86, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5872).

While there is a clear distinction in the effect of the Subrogated Lien on Real Property as compared with the Lien upon Funds, the functional process for asserting them is the same. The Lien on Real Property requires filing with the Clerk of Superior Court within a specific time period, whereas the Lien upon Funds as a stand-alone lien has no such time restriction, but must be served to become effective. *See* N.C. Gen. Stat. §§ 44A-19, 23. The most obvious distinction is that the Lien upon Funds creates an "interest in property" that is property of the estate (even though the funds in question are subject to Lien Claimants' super-priority secured lien rights and BB&T's inferior security interest) whereas the "interest in property" created by the Subrogated Lien on Real Property affects only real property which is not and never would be property of the debtor's estate when the debtor is not the owner.

In the instant case, it is critical to recognize that the real property to which the lien attaches is not and never would be property of the bankruptcy estate. In this case there are numerous projects at issue, but the common denominator is that none are owned by the Debtor. Any claims which would be enforceable as a Subrogated Lien upon Real Property would be enforceable against a party or parties who are not subject to the jurisdiction of the Bankruptcy Court except to the extent that Debtor's bankruptcy intervened in the chain.

BB&T cites to an extended portion of the overruled decision in *Shearin* which raises the concept of "relation back" as it applies in the North Carolina lien statutes. *(Appellant Br. at 40-41).* Any argument related to "relation back" in the context of this appeal is a red herring. In interpreting a Wisconsin wage lien statute which was in many respects analogous to the North Carolina mechanic's lien statute, the Seventh Circuit determined that "a priming statute need not contain language expressly providing for retroactive perfection in order to trigger the exception provided in 11 U.S.C. § 546(b)(1)(A) to the automatic stay of post-petition efforts to perfect a property interest." *In re AR Accessories*, 345 F.3d at 458; *See In re Lionel Corp.,* 29 F.3d 88, 95 (2d Cir. 1994).

The relation back provisions of N.C. Gen. Stat. §§ 44A-8 and 23 are limited to the real property liens and sound out of real property law. By providing for relation back, the legislature ensured that the security provided by the real property could not be usurped by a transfer or encumbrance of the real property during the period between first furnishing and perfection of the lien. Once perfected, the lien claimant has a lien which stays with the asset, the real property, even if it changes hands, and an interest in the value of the real property which has priority over subsequent borrowers against the value of the property. *See* N.C. Gen. Stat. §§ 44A-8, 23. Relation back is not a condition of perfection, but rather an effect of perfection. Ultimately, relying upon the test set out in *In re 229 Main St.* and *In re*

31

*Maryland Glass Corp.,* the question is not "when" a lien arises, but rather, does the lien, once perfected, take priority over prior perfected interests.

BB&T argues that the opinion in *In re 229 Main St.* supports its position because the Commonwealth in that case had actually commenced proceedings against the debtor pre-petition; this argument fails for at least two reasons. *(Appellant Br. at 49-50).* First, applying the same line of reasoning to the mechanic's lien context would result in a rule that only a fully perfected lien interest which was (at a minimum) in the process of being enforced through a lawsuit could ever result in an "interest in property" under 11 U.S.C. §362. This is an erroneous position because the law is clear that an "interest in property" is broader than a fully perfected lien. *In re Maryland Glass Corp.*, 723 F.2d at 1141-42. Second, the court in *In re 229 Main St.* relied in part on the decision in *In re Perona Bros., Inc.* wherein the Court concluded that New Jersey obtained an "interest in property" under section 362 pre-petition when all it had done was notify the debtor that it may place a lien on the property if it had to clean up any toxic waste. *See In re Perona Bros. Inc.,* 186 B.R. 833 (D.N.J. 1995). None of the work for which the State sought compensation through its lien occurred until *after* the debtor filed for bankruptcy. Surely the Lien Claimants, having actually delivered their materials and equipment pre-petition, are in a better position than

the State was in *In re Perona Bros.* to have earned and be entitled to a recognized "interest in property."

The fundamental issue, whether considering a Lien upon Funds or a Subrogated Lien on Real Property, is whether the lien claimant held an interest in property subject to a law of general applicability and the answer to both of those questions in this instance is "yes."

## III. Public policy weighs in favor of affirming the District Court's ruling.

In the instant case, BB&T loaned money to the Debtor to provide funds for the operation of Debtor's business, which involves the installation of underground utilities using the services and materials provided by the Lien Claimants. *(J.A. at 158, 164, 173-175).* BB&T took a security interest in Debtor's accounts receivable. *(J.A. at 306).* If BB&T is permitted to use the automatic stay as a tool to prevent the Lien Claimants from asserting their lien rights granted by the State of North Carolina, then BB&T will gain a windfall by virtue of collecting the accounts receivable from property owners and general contractors for property improved by the Lien Claimants without payment to Lien Claimants for their materials or equipment. This result would circumvent the purpose of subcontractor lien rights, which is to provide a mechanism for subcontractors to secure payment for monies rightfully owed to them.

This windfall is the type of injustice the North Carolina constitution and statutes are designed to prevent. The Bankruptcy Court for the Eastern District of North Carolina as well as the District Court for the Eastern District of North Carolina have both carefully analyzed applicable statutes and controlling precedent and concluded that the post-petition filing of a claim of lien upon funds is permitted as an exception to the automatic stay set out in 11 U.S.C. § 362(b)(3). *(J.A. at 258, 275, 352).*

As noted above, North Carolina's constitution and lien laws set forth a strong public policy that those Subcontractors who actually perform the work or supply the materials or equipment utilized to improve real property should be paid first out the receivables generated by their labor, materials and equipment. BB&T has acknowledged that the Lien Claimants' claims of liens upon funds, if allowed to stand, are clearly superior to BB&T's blanket UCC lien upon the Debtor's receivables. *(J.A. at 272).*

Notwithstanding this clearly controlling statutory priority, BB&T now argues that the Lien Claimants should lose their right to perfect their super-priority liens on contract funds the Lien Claimants generated merely because BB&T's customer filed for bankruptcy. The windfall BB&T is attempting to reap at the Lien Claimants' expense is no less in the case at bar than the bank's position in *In re Maryland Glass Corp.* In rejecting the bank's position in that case, this Court

34

observed: "It is not however a bankruptcy objective to make a secured creditor better off than it would have been had there been no bankruptcy at all." *In re Maryland Glass Corp.,* 723 F.2d at 1145 (citations omitted).

In *In re Maryland Glass Corp.* this Court further held:

> Congress in enacting § 546(b) perceived that the mere intervention of a petition in bankruptcy should not be permitted to defeat what would otherwise be a valid security interest in property. If that interest awaits perfection, and if the generally applicable state law permits that perfection to be good against an intervening purchaser, then the trustee should stand in no better shoes than such an intervening purchaser.

*In re Maryland Glass Corp.,* 723 F.2d at 1143 (citations omitted).

The Lien Claimants' post-petition service of their claims of liens upon funds placed them in the exact same position they would have been absent the Debtor's bankruptcy petition. BB&T is seeking, through this appeal, to advance its second place security position to that of first position to the prejudice of the Lien Claimants and other creditors. BB&T nonetheless argues that reversing the well-reasoned opinion of the District Court somehow promotes the equal treatment of all creditors envisioned by the bankruptcy code. *(Appellant Br. at 52).* The reality is that BB&T and only BB&T will reap a windfall if the opinions below are reversed.

BB&T knew when it extended credit to the Debtor that existing North Carolina lien law effectively limited BB&T's security interest in the Debtor's

35

receivables to the portion of the receivables that were for the Debtor's self-performance of its work and/or the Debtor's "profit" over and above the amount due to the Debtor's lower tier Subcontractors for the portion of the receivables generated by those lower tier Subcontractors.  This Court should not turn North Carolina's construction industry on its head again by adopting BB&T's arguments that are contrary to the public policies of North Carolina as well as the Bankruptcy Code.

The Bankruptcy Court's and District Court's rulings in this case have restored the status quo and have placed BB&T in the same position it was in when it extended credit to the Debtor:  behind the Lien Claimants' claims.  Public policy dictates that the District Court's ruling should be affirmed.

## **<u>CONCLUSION</u>**

In summary, the North Carolina General Assembly is charged by the North Carolina Constitution with ensuring that there is legislation which provides for an adequate lien for materialmen and laborers on construction projects.  N.C. Const., Art. X, § 3.  The North Carolina General Assembly enacted Chapter 44A, Article 2 to fulfill that duty and in so doing created a generally applicable statute which provides materialmen and laborers, from the moment they first furnish material or labor to a project, with an interest in the funds flowing through a construction project.  The interest is inchoate, but it is an interest nonetheless.  This interest in

36

funds has long been viewed in North Carolina, by statute and case law, as an "interest in property" that arises at the time subcontractors and suppliers first furnish material or labor to a project. *Contract Steel*, 321 N.C. at 220, 362 S.E.2d at 550-51. Therefore, the serving of a Notice of Claim of Lien upon Funds does not create the "interest in property," it merely perfects the lien.

The case law and statutory law cited herein provide a solid legal framework for the premise that Chapter 44A, Article 2 of the North Carolina General Statutes is a law of general applicability which creates an interest in property for subcontractors and suppliers at the time they first furnish labor or materials, and that right is one clearly falling within the exception set out in 11 U.S.C. § 362(a)(4).

For the reasons set out herein, the District Court's opinion should be affirmed.

Respectfully submitted, this the 28th day of August, 2013.

<u>/s/ William J. Wolf</u>
William J. Wolf
Ethan J. Fleischer
Bugg & Wolf, PA
411 Andrews Road, Suite 170
Durham, North Carolina 27705
(919) 383-9431

*Counsel for Appellees*
*Hanson Aggregates Southeast, LLC,*
*Couch Oil Company of Durham, Inc.,*
*and R.W. Moore Equipment Co.*


Paul A. Sheridan
Nancy E. Hannah
Hannah Sheridan Loughridge
& Cochran, LLP
1011 Schaub Drive, Suite 104
Raleigh, North Carolina 27606
(919) 859-6840

*Counsel for Appellees*
*HD Supply Waterworks, LTD.,*
*Water Works Supply, Inc.,*
*Gregory Poole Equipment Company,*
*Thamas Concrete of Carolina, Inc.,*
*and The John R. McAdams Company, Inc.*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because this brief contains 9463 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief has been prepared in proportionally spaced font, Times New Roman, 14 point using Microsoft Word.

This the 28th day of August, 2013.

/s/ William J. Wolf
William J. Wolf

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that the required copies of the foregoing Response Brief of Appellees were filed with the Clerk, United States Court of Appeals via hand delivery and electronically using the Court's CM/ECF system, which sends notification of such filing to the following:

Joseph H. Stallings
Nicholas C. Brown
James B. Angell
Russell W. Johnson
Howard, Stallings, From & Hutson, PA
5410 Trinity Road, Suite 210
Raleigh, North Carolina 27607
*Counsel for Appellant*

This the 28th day of August, 2013.

/s/ William J. Wolf
William J. Wolf

# **ADDENDUM**

## ADDENDUM I
### Relevant Statutes in Chapter 44A[1]

Add. Page

A.   N.C. Const. Art. X ........................................................... A-43

B.   N.C. Gen. Stat. § 25-9-301 ............................................... A-44

C.   N.C. Gen. Stat. § 25-9-324 ............................................... A-45

D.   N.C. Gen. Stat. § 44A-7 .................................................. A-48

E.   N.C. Gen. Stat. § 44A-8 .................................................. A-49

F.   N.C. Gen. Stat. § 44A-12 ................................................. A-12

G.   N.C. Gen. Stat. § 44A-17 ................................................ A-53

H.   N.C. Gen. Stat. § 44A-18 ................................................ A-54

I.   N.C. Gen. Stat. § 44A-19 ................................................ A-55

J.   N.C. Gen. Stat. § 44A-20 ................................................ A-58

K.   N.C. Gen. Stat. § 44A-21 ................................................ A-59

L.   N.C. Gen. Stat. § 44A-22 ................................................ A-60

M.   N.C. Gen. Stat. § 44A-23 ................................................ A-61

---

[1] Chapter 44A was amended by the legislature effective January 1, 2013, but those amendments are not applicable to this appeal. The statutes provided in this Addendum were those in effect prior to the 2013 revisions.

**ARTICLE X**
**HOMESTEADS AND EXEMPTIONS**

**Sec. 3.  Mechanics' and laborers' liens.**
The General Assembly shall provide by proper legislation for giving to mechanics and laborers an adequate lien on the subject-matter of their labor.  The provisions of Sections 1 and 2 of this Article shall not be so construed as to prevent a laborer's lien for work done and performed for the person claiming the exemption or a mechanic's lien for work done on the premises.

## N.C. Gen. Stat. § 25-9-301

**§ 25-9-301. Law governing perfection and priority of security interests**

Except as otherwise provided in _G.S. 25-9-303_ through _G.S. 25-9-306_, the following rules determine the law governing perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral:

**(1)** Except as otherwise provided in this section, while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral.

**(2)** While collateral is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a possessory security interest in that collateral.

**(3)** Except as otherwise provided in paragraph (4) of this section, while tangible negotiable documents, goods, instruments, money, or tangible chattel paper is located in a jurisdiction, the local law of that jurisdiction governs:

**a.** Perfection of a security interest in the goods by filing a fixture filing;

**b.** Perfection of a security interest in timber to be cut; and

**c.** The effect of perfection or nonperfection and the priority of a nonpossessory security interest in the collateral.

**(4)** The local law of the jurisdiction in which the wellhead or minehead is located governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in as-extracted collateral.

**History**

1945, c. 196, s. 2; 1957, c. 564; 1965, c. 700, s. 1; 1967, c. 562, s. 1; 1975, c. 862, s. 7; 1989 (Reg. Sess., 1990), c. 1024, s. 8(e), (f); 1997-181, s. 2; 1999-73, s. 4(a), (b); 2000-169, s. 1; 2006-112, s. 48.

## N.C. Gen. Stat. § 25-9-324

Statutes current through the 2012 Regular Session Annotations Current through March 29, 2013

### § 25-9-324. Priority of purchase-money security interests

**(a)**              General rule: purchase-money priority. -- Except as otherwise provided in subsection (g)
of this section, a perfected purchase-money security interest in goods other than inventory or livestock has priority over a conflicting security interest in the same goods, and, except as otherwise provided in  *G.S. 25-9-327*, a perfected security interest in its identifiable proceeds also has priority, if the purchase-money security interest is perfected when the debtor receives possession of the collateral or within 20 days thereafter.

**(b)**              **Inventory purchase-money priority. --**  Subject to subsection (c) of this section and ex-
cept as otherwise provided in subsection (g) of this section, a perfected purchase-money se-
curity interest in inventory has priority over a conflicting security interest in the same in-
ventory, has priority over a conflicting security interest in chattel paper or an instrument
constituting proceeds of the inventory and in proceeds of the chattel paper, if so pro-
vided in  *G.S. 25-9-330*, and, except as otherwise provided in  *G.S. 25-9-327*, also has prior-
ity in identifiable cash proceeds of the inventory to the extent the identifiable cash pro-
ceeds are received on or before the delivery of the inventory to a buyer, if:

**(1)** The purchase-money security interest is perfected when the debtor receives possession
              of the inventory;

**(2)** The purchase-money secured party sends an authenticated notification to the holder of
              the conflicting security interest;

**(3)** The holder of the conflicting security interest receives the notification within five
              years before the debtor receives possession of the inventory; and

**(4)** The notification states that the person sending the notification has or expects to ac-
quire a purchase-money security interest in inventory of the debtor and describes the in-
ventory.

**(c)**              **Holders of conflicting inventory security interests to be notified. --**  Subdivisions
(b)(2) through (b)(4) of this section apply only if the holder of the conflicting security interest had filed a financing statement covering the same types of inventory:

**(1)** If the purchase-money security interest is perfected by filing, before the date of the fil-
              ing; or

**(2)** If the purchase-money security interest is temporarily perfected without filing or pos-
session under *G.S. 25-9-312(f)*, before the beginning of the 20-day period thereun-

der.

**(d)**            **Livestock purchase-money priority. --** Subject to subsection (e) of this section and ex-
cept as otherwise provided in subsection (g) of this section, a perfected purchase-money security interest in livestock that are farm products has priority over a conflicting security interest in the same livestock, and, except as otherwise provided in *G.S. 25-9-327*, a perfected security interest in their identifiable proceeds and identifiable products in their unmanufactured states also has priority, if:

**(1)** The purchase-money security interest is perfected when the debtor receives possession
of the livestock;

**(2)** The purchase-money secured party sends an authenticated notification to the holder of
the conflicting security interest;

**(3)** The holder of the conflicting security interest receives the notification within six
months before the debtor receives possession of the livestock; and

**(4)** The notification states that the person sending the notification has or expects to ac-
quire a purchase-money security interest in livestock of the debtor and describes the live-
stock.

**(e)**            **Holders of conflicting livestock security interests to be notified. --** Subdivisions (d)(2)
through (d)(4) of this section apply only if the holder of the conflicting security interest had filed a financing statement covering the same types of livestock:

**(1)** If the purchase-money security interest is perfected by filing, before the date of the fil-
ing; or

**(2)** If the purchase-money security interest is temporarily perfected without filing or pos-
session under *G.S. 25-9-312(f)*, before the beginning of the 20-day period thereun-

der.

**(f)**            **Software purchase-money priority. --** Except as otherwise provided in subsection (g) of
this section, a perfected purchase-money security interest in software has priority over a con-
flicting security interest in the same collateral, and, except as otherwise provided in *G.S. 25 -9-327*, a perfected security interest in its identifiable proceeds also has priority, to the extent that the purchase-money security interest in the goods in which the software was acquired for use has priority in the goods and proceeds of the goods under this section.

**(g)**        **Conflicting purchase-money security interests. --** If more than one security interest quali-
fies for priority in the same collateral under subsection (a), (b), (d), or (f) of this section:

**(1)** A security interest securing an obligation incurred as all or part of the price of the col-
lateral has priority over a security interest securing an obligation incurred for value
given to enable the debtor to acquire rights in or the use of collateral; and

**(2)** In all other cases, _G.S. 25-9-322(a)_ applies to the qualifying security interests.

**History**

1945, c. 182, s. 4; c. 196, s. 4; 1955, c. 386, s. 2; 1961, c. 574; 1965, c. 700, s. 1; 1975, c. 862,
s. 7; 1979, c. 404, s. 1; 1997-181, s. 8; 2000-169, s. 1.

A - 47

# N.C. Gen. Stat. § 44A-7

§ 44A-7. Definitions

Unless the context otherwise requires in this Article:

(1) "Improve" means to build, effect, alter, repair, or demolish any improvement upon, connected with, or on or beneath the surface of any real property, or to excavate, clear, grade, fill or landscape any real property, or to construct driveways and private roadways, or to furnish materials, including trees and shrubbery, for any of such purposes, or to perform any labor upon such improvements, and shall also mean and include any design or other professional or skilled services furnished by architects, engineers, land surveyors and landscape architects registered under Chapter 83A, 89A or 89C of the General Statutes, and rental of equipment directly utilized on the real property in making the improvement.

(2) "Improvement" means all or any part of any building, structure, erection, alteration, demolition, excavation, clearing, grading, filling, or landscaping, including trees and shrubbery, driveways, and private roadways, on real property.

(3) An "owner" is a person who has an interest in the real property improved and for whom an improvement is made and who ordered the improvement to be made. "Owner" includes successors in interest of the owner and agents of the owner acting within their authority.

(4) "Real property" means the real estate that is improved, including lands, leaseholds, tenements and hereditaments, and improvements placed thereon.

**Credits**
Added by Laws 1969, c. 1112, § 1. Amended by Laws 1975, c. 715, § 1; Laws 1985, c. 689, § 13; Laws 1995 (Reg. Sess., 1996), c. 607, § 1, eff. Oct. 1, 1996; S.L. 2005-229, § 1, eff. Oct. 1, 2005.

## N.C. Gen. Stat. § 44A-8

§ 44A-8. Mechanics', laborers', and materialmen's lien; persons entitled to claim of lien on real property

Any person who performs or furnishes labor or professional design or surveying services or furnishes materials or furnishes rental equipment pursuant to a contract, either express or implied, with the owner of real property for the making of an improvement thereon shall, upon complying with the provisions of this Article, have a right to file a claim of lien on real property on the real property to secure payment of all debts owing for labor done or professional design or surveying services or material furnished or equipment rented pursuant to the contract.

**Credits**
Added by Laws 1969, c. 1112, § 1. Amended by Laws 1975, c. 715, § 2; Laws 1995 (Reg. Sess., 1996), c. 607, § 2, eff. Oct. 1, 1996; S.L. 2005-229, § 1. eff. Oct. 1, 2005.

## N.C. Gen. Stat. § 44A-12

§ 44A-12. Filing claim of lien on real property
Effective: [See Text Amendments] to December 31, 2012


(a) Place of Filing. -- All claims of lien on real property must be filed in the office of the clerk of superior court in each county where the real property subject to the claim of lien on real property is located. The clerk of superior court shall note the claim of lien on real property on the judgment docket and index the same under the name of the record owner of the real property at the time the claim of lien on real property is filed. An additional copy of the claim of lien on real property may also be filed with any receiver, referee in bankruptcy or assignee for benefit of creditors who obtains legal authority over the real property.


(b) Time of Filing. -- Claims of lien on real property may be filed at any time after the maturity of the obligation secured thereby but not later than 120 days after the last furnishing of labor or materials at the site of the improvement by the person claiming the lien.


<Text of subsec. (c) eff. until Jan. 1, 2013.>

(c) Contents of Claim of Lien on Real Property to Be Filed. -- All claims of lien on real property must be filed using a form substantially as follows:


**CLAIM OF LIEN ON REAL PROPERTY**
(1) Name and address of the person claiming the claim of lien on real property:


(2) Name and address of the record owner of the real property claimed to be subject to the claim of lien on real property at the time the claim of lien on real property is filed:


(3) Description of the real property upon which the claim of lien on real property is claimed: (Street address, tax lot and block number, reference to recorded instrument, or any other description of real property is sufficient, whether or not it is specific, if it reasonably identifies what is described.)


(4) Name and address of the person with whom the claimant contracted for the furnishing of labor or materials:


(5) Date upon which labor or materials were first furnished upon said property by the claimant:


(5a) Date upon which labor or materials were last furnished upon said property by the claimant:


(6) General description of the labor performed or materials furnished and the amount claimed therefor:


_____

Lien Claimant

Filed this _____ day of _____, _____

_____

Clerk of Superior Court

A general description of the labor performed or materials furnished is sufficient. It is not necessary for lien claimant to file an itemized list of materials or a detailed statement of labor performed.

<Text of subsec. (c) eff. Jan. 1, 2013.>

(c) Contents of Claim of Lien on Real Property to Be Filed.—All claims of lien on real property must be filed using a form substantially as follows:

CLAIM OF LIEN ON REAL PROPERTY

(1) Name and address of the person claiming the claim of lien on real property:

(2) Name and address of the record owner of the real property claimed to be subject to the claim of lien on real property at the time the claim of lien on real property is filed and, if the claim of lien on real property is being asserted pursuant to G.S. 44A-23, the name of the contractor through which subrogation is being asserted:

(3) Description of the real property upon which the claim of lien on real property is claimed: (Street address, tax lot and block number, reference to recorded instrument, or any other description of real property is sufficient, whether or not it is specific, if it reasonably identifies what is described.)

(4) Name and address of the person with whom the claimant contracted for the furnishing of labor or materials:

(5) Date upon which labor or materials were first furnished upon said property by the claimant:

(5a) Date upon which labor or materials were last furnished upon said property by the claimant:

(6) General description of the labor performed or materials furnished and the amount claimed therefor:

I hereby certify that I have served the parties listed in (2) above in accordance with the requirements of G.S. 44A-11.

........................
Lien Claimant
Filed this .... day of ...., ....

............................................

Clerk of Superior Court

A general description of the labor performed or materials furnished is sufficient. It is not necessary for lien claimant to file an itemized list of materials or a detailed statement of labor performed.

(d) No Amendment of Claim of Lien on Real Property. — A claim of lien on real property may not be amended. A claim of lien on real property may be cancelled by a claimant or the claimant's authorized agent or attorney and a new claim of lien on real property substituted therefor within the time herein provided for original filing.

A - 51

(e) Notice of Assignment of Claim of Lien on Real Property. -- When a claim of lien on real property has been filed, it may be assigned of record by the lien claimant in a writing filed with the clerk of superior court who shall note the assignment in the margin of the judgment docket containing the claim of lien on real property. Thereafter the assignee becomes the lien claimant of record.

(f) Waiver of Right to File, Serve, or Claim Liens as Consideration for Contract Against Public Policy. -- An agreement to waive the right to file a claim of lien on real property granted under this Part, or an agreement to waive the right to serve a notice of claim of lien upon funds granted under Part 2 of this Article, which agreement is in anticipation of and in consideration for the awarding of any contract, either expressed or implied, for the making of an improvement upon real property under this Article is against public policy and is unenforceable. This section does not prohibit subordination or release of a lien granted under this Part or Part 2 of this Article.

**Credits**
Added by Laws 1969, c. 1112, § 1. Amended by Laws 1977, c. 369; Laws 1983, c. 888; S.L. 1999-456, § 59, eff. Jan. 1, 2000; S.L. 2005-229, § 1, eff. Oct. 1, 2005; S.L. 2012-175, § 3, eff. Jan. 1, 2013.

## N.C. Gen. Stat. § 44A-17

§ 44A-17. Definitions
Effective: [See Text Amendments] to December 31, 2012

<Text eff. until Jan. 1, 2013. See note below.>

Unless the context otherwise requires in this Article:

(1) "Contractor" means a person who contracts with an owner to improve real property.

(2) "First tier subcontractor" means a person who contracts with a contractor to improve real property.

(3) "Obligor" means an owner, contractor or subcontractor in any tier who owes money to another as a result of the other's partial or total performance of a contract to improve real property.

(4) "Second tier subcontractor" means a person who contracts with a first tier subcontractor to improve real property.

(5) "Third tier subcontractor" means a person who contracts with a second tier subcontractor to improve real property.

**Credits**
Added by Laws 1971, c. 880, § 1. Amended by S.L. 2005-229, § 1, eff. Oct. 1, 2005.

# N.C. Gen. Stat. § 44A-18

§ 44A-18. Grant of lien upon funds; subrogation; perfection
Effective: [See Text Amendments] to December 31, 2012

Upon compliance with this Article:

(1) A first tier subcontractor who furnished labor, materials, or rental equipment at the site of the improvement shall be entitled to a lien upon funds that are owed to the contractor with whom the first tier subcontractor dealt and that arise out of the improvement on which the first tier subcontractor worked or furnished materials.

(2) A second tier subcontractor who furnished labor, materials, or rental equipment at the site of the improvement shall be entitled to a lien upon funds that are owed to the first tier subcontractor with whom the second tier subcontractor dealt and that arise out of the improvement on which the second tier subcontractor worked or furnished materials. A second tier subcontractor, to the extent of the second tier subcontractor's lien provided in this subdivision, shall also be entitled to be subrogated to the lien of the first tier subcontractor with whom the second tier contractor dealt provided for in subdivision (1) of this section and shall be entitled to perfect it by notice of claim of lien upon funds to the extent of the claim.

(3) A third tier subcontractor who furnished labor, materials, or rental equipment at the site of the improvement shall be entitled to a lien upon funds that are owed to the second tier subcontractor with whom the third tier subcontractor dealt and that arise out of the improvement on which the third tier subcontractor worked or furnished materials. A third tier subcontractor, to the extent of the third tier subcontractor's lien upon funds provided in this subdivision, shall also be entitled to be subrogated to the lien upon funds of the second tier subcontractor with whom the third tier contractor dealt and to the lien upon funds of the first tier subcontractor with whom the second tier subcontractor dealt to the extent that the second tier subcontractor is entitled to be subrogated thereto, and in either case shall be entitled to perfect the same by notice of claim of lien upon funds to the extent of the claim.

(4) Subcontractors more remote than the third tier who furnished labor, materials, or rental equipment at the site of the improvement shall be entitled to a lien upon funds that are owed to the person with whom they dealt and that arise out of the improvement on which they furnished labor, materials, or rental equipment, but such remote tier subcontractor shall not be entitled to subrogation to the rights of other persons.

(5) The liens upon funds granted under this section shall secure amounts earned by the lien claimant as a result of having furnished labor, materials, or rental equipment at the site of the improvement under the contract to improve real property, including interest at the legal rate provided in G.S. 24-5, whether or not such amounts are due and whether or not performance or delivery is complete. In the event insufficient funds are retained to satisfy all lien claimants, subcontractor lien claimants may recover the interest due under this subdivision on a pro rata basis, but in no event shall interest due under this subdivision increase the liability of the obligor under G.S. 44A-20.

(6) A lien upon funds granted under this section is perfected upon the giving of notice of claim of lien upon funds in writing to the obligor as provided in G.S. 44A-19 and shall be effective upon the obligor's receipt of the notice. The subrogation rights of a first, second, or third tier subcontractor to the claim of lien on real property of the contractor created by Part 1 of Article 2 of this Chapter are perfected as provided in G.S. 44A-23.

**Credits**
Added by Laws 1971, c. 880, § 1. Amended by Laws 1985, c. 702, § 3; Laws 1995 (Reg. Sess., 1996), c. 607, § 3, eff. Oct. 1, 1996; S.L. 2005-229, § 1, eff. Oct. 1, 2005.

## N.C. Gen. Stat. § 44A-19

§ 44A-19. Notice of claim of lien upon funds

(a) Notice of a claim of lien upon funds shall set forth all of the following information:

(1) The name and address of the person claiming the lien upon funds.

(2) A general description of the real property improved.

(3) The name and address of the person with whom the lien claimant contracted to improve real property.

(4) The name and address of each person against or through whom subrogation rights are claimed.

(5) A general description of the contract and the person against whose interest the lien upon funds is claimed.

(6) The amount of the lien upon funds claimed by the lien claimant under the contract.

(b) All notices of claims of liens upon funds by first, second, or third tier subcontractors must be given using a form substantially as follows:

**NOTICE OF CLAIM OF LIEN UPON FUNDS BY**
**FIRST, SECOND, OR THIRD TIER SUBCONTRACTOR**
To:

1. _____, owner of property involved.

(Name and address)

2. _____, general contractor.

(Name and address)

3. _____, first tier subcontractor against or through

(Name and address) whom subrogation is claimed, if any.

4. _____, second tier subcontractor against or through

(Name and address) whom subrogation is claimed, if any.

General description of real property where labor performed or material furnished:

_____

_____

_____

General description of undersigned lien claimant's contract including the names of the parties thereto:
_____

_____

_____

The amount of lien upon funds claimed pursuant to the above described contract:

_____

The undersigned lien claimant gives this notice of claim of lien upon funds pursuant to North Carolina law and claims all rights of subrogation to which he is entitled under Part 2 of Article 2 of Chapter 44A of the General Statutes of North Carolina.

Dated _____

_____, Lien Claimant

_____

Address)

(c) All notices of claims of liens upon funds by subcontractors more remote than the third tier must be given using a form substantially as follows:

**NOTICE OF CLAIM OF LIEN UPON FUNDS BY SUBCONTRACTOR**
**MORE REMOTE THAN THE THIRD TIER**
To:

_____, person holding funds against which lien upon funds is

(Name and Address)

claimed.

General description of real property where labor performed or material furnished:

_____

_____

_____

General description of undersigned lien claimant's contract including the names of the parties thereto:
_____

_____

_____

The amount of lien upon funds claimed pursuant to the above described contract:

$ _____

The undersigned lien claimant gives this notice of claim of lien upon funds pursuant to North Carolina law and claims all rights to which he or she is entitled under Part 2 of Article 2 of Chapter 44A of the General Statutes of North Carolina.

Dated: _____

_____, Lien Claimant

_____

(Address)

(d) Notices of claims of lien upon funds under this section shall be served upon the obligor by personal delivery or in any manner authorized by Rule 4 of the North Carolina Rules of Civil Procedure. A copy of the notice of claim of lien upon funds shall be attached to any claim of lien on real property filed pursuant to G.S. 44A-20(d) or G.S. 44A-23.

(e) Notices of claims of lien upon funds shall not be filed with the clerk of superior court and shall not be indexed, docketed, or recorded in any way as to affect title to any real property, except a notice of a claim of lien upon funds may be filed with the clerk of superior court under either of the following circumstances:

(1) When the notice of claim of lien upon funds is attached to a claim of lien on real property filed pursuant to G.S. 44A-20(d) or G.S. 44A-23.

(2) When the notice of claim of lien upon funds is filed by the obligor for the purpose of discharging the claim of lien upon funds in accordance with G.S. 44A-20(e).

(f) Filing a notice of claim of lien upon funds pursuant to subsection (e) of this section is not a violation of G.S. 44A-12.1.

**Credits**
Added by Laws 1971, c. 880, § 1. Amended by Laws 1985, c. 702, § 1; S.L. 2005-229, § 1, eff. Oct. 1, 2005.

## N.C. Gen. Stat. § 44A-20

§ 44A-20. Duties and liability of obligor

(a) Upon receipt of the notice of claim of lien upon funds provided for in this Article, the obligor shall be under a duty to retain any funds subject to the lien or liens upon funds under this Article up to the total amount of such liens upon funds as to which notices of claims of lien upon funds have been received.

(b) If, after the receipt of the notice of claim of lien upon funds to the obligor, the obligor makes further payments to a contractor or subcontractor against whose interest the lien or liens upon funds are claimed, the lien upon funds shall continue upon the funds in the hands of the contractor or subcontractor who received the payment, and in addition the obligor shall be personally liable to the person or persons entitled to liens upon funds up to the amount of such wrongful payments, not exceeding the total claims with respect to which the notice of claim of lien upon funds was received prior to payment.

(c) If an obligor makes a payment after receipt of notice of claim of lien on funds and incurs personal liability under subsection (b) of this section, the obligor shall be entitled to reimbursement and indemnification from the party receiving such payment.

(d) If the obligor is an owner of the property being improved, the lien claimant shall be entitled to a claim of lien upon real property upon the interest of the obligor in the real property to the extent of the owner's personal liability under subsection (b) of this section, which claim of lien on real property shall be enforced only in the manner set forth in G.S. 44A-7 through G.S. 44A-16 and which claim of lien on real property shall be entitled to the same priorities and subject to the same filing requirements and periods of limitation applicable to the contractor. The claim of lien on real property is perfected as of the time set forth in G.S. 44A-10 upon the filing of the claim of lien on real property pursuant to G.S. 44A-12. The claim of lien on real property shall be in the form set out in G.S. 44A-12(c) and shall contain, in addition, a copy of the notice of claim of lien upon funds given pursuant to G.S. 44A-19 as an exhibit together with proof of service thereof by affidavit, and shall state the grounds the lien claimant has to believe that the obligor is personally liable for the debt under subsection (b) of this section.

(e) A notice of claim of lien upon funds under G.S. 44A-19 may be filed by the obligor with the clerk of superior court in each county where the real property upon which the filed notice of claim of lien upon funds is located for the purpose of discharging the notice of claim of lien upon funds by any of the methods described in G.S. 44A-16.

(f) A bond deposited under this section to discharge a filed notice of claim of lien upon funds shall be effective to discharge any claim of lien on real property filed by the same lien claimant pursuant to subsection (d) of this section or G.S. 44A-23 and shall further be effective to discharge any notices of claims of lien upon funds served by lower tier subcontractors or any claims of lien on real property filed by lower tier subcontractors pursuant to subsection (d) of this section or G.S. 44A-23 claiming through or against the contractor or higher tier subcontractors up to the amount of the bond.

**Credits**
Added by Laws 1971, c. 880, § 1. Amended by Laws 1985, c. 702, § 2; S.L. 2005-229, § 1, eff. Oct. 1, 2005.

# N.C. Gen. Stat. § 44A-21

N.C.G.S. § 44A-21. Pro rata payments

(a) Where the obligor is a contractor or subcontractor and the funds in the hands of the obligor and the obligor's personal liability, if any, under G.S. 44A-20 are less than the amount of valid liens upon funds that have been received by the obligor under this Article, the parties entitled to liens upon funds shall share the funds on a pro rata basis.

(b) Where the obligor is an owner and the funds in the hands of the obligor and the obligor's personal liability, if any, under G.S. 44A-20 are less than the sum of the amount of valid claims of liens upon funds that have been received by the obligor under this Article and the amount of the valid claims of liens on real property upon the owner's property filed by the subcontractors with the clerk of superior court under G.S. 44A-23, the parties entitled to liens upon funds and the parties entitled to subrogation claims of liens on real property upon the owner's property shall share the funds on a pro rata basis.

**Credits**
Added by Laws 1971, c. 880, § 1. Amended by S.L. 1998-217, § 4(d), eff. Oct. 31, 1998; S.L. 2005-229, § 1, eff. Oct. 1, 2005.

## N.C. Gen. Stat. § 44A-22

N.C.G.S. § 44A-22. Priority of liens upon funds

Liens upon funds perfected under this Article have priority over all other interests or claims theretofore or thereafter created or suffered in the funds by the person against whose interest the lien upon funds is asserted, including, but not limited to, liens arising from garnishment, attachment, levy, judgment, assignments, security interests, and any other type of transfer, whether voluntary or involuntary. Any person who receives payment from an obligor in bad faith with knowledge of a lien upon funds shall take such payment subject to the lien upon funds.

**Credits**
Added by Laws 1971, c. 880, § 1. Amended by S.L. 2005-229, § 1, eff. Oct. 1, 2005.

# N.C. Gen. Stat. § 44A-23

N.C.G.S.A. § 44A-23. Contractor's claim of lien on real property; perfection of subrogation rights of subcontractor

Effective: [See Text Amendments] to December 31, 2012

(a) First tier subcontractor. -- A first tier subcontractor, who gives notice of claim of lien upon funds as provided in this Article, may, to the extent of this claim, enforce the claim of lien on real property of the contractor created by Part 1 of this Article. The manner of such enforcement shall be as provided by G.S. 44A-7 through 44A-16. The claim of lien on real property is perfected as of the time set forth in G.S. 44A-10 upon filing of the claim of lien on real property pursuant to G.S. 44A-12. Upon the filing of the claim of lien on real property, with the notice of claim of lien upon funds attached, and the commencement of the action, no action of the contractor shall be effective to prejudice the rights of the subcontractor without his written consent.

(b) Second or third subcontractor. --

(1) A second or third tier subcontractor, who gives notice of claim of lien upon funds as provided in this Article, may, to the extent of his claim, enforce the claim of lien on real property of the contractor created by Part 1 of Article 2 of the Chapter except when:

a. The contractor, within 30 days following the date the building permit is issued for the improvement of the real property involved, posts on the property in a visible location adjacent to the posted building permit and files in the office of the clerk of superior court in each county wherein the real property to be improved is located, a completed and signed notice of contract form and the second or third tier subcontractor fails to serve upon the contractor a completed and signed notice of subcontract form by the same means of service as described in G.S. 44A-19(d); or

b. After the posting and filing of a signed notice of contract and the service upon the contractor of a signed notice of subcontract, the contractor serves upon the second or third tier subcontractor, within five days following each subsequent payment, by the same means of service as described in G.S. 44A-19(d), the written notice of payment setting forth the date of payment and the period for which payment is made as requested in the notice of subcontract form set forth herein.

(2) The form of the notice of contract to be so utilized under this section shall be substantially as follows and the fee for filing the same with the clerk of superior court shall be the same as charged for filing a claim of lien on real property:

"NOTICE OF CONTRACT

"(1) Name and address of the Contractor:

"(2) Name and address of the owner of the real property at the time this Notice of Contract is recorded:

"(3) General description of the real property to be improved (street address, tax map lot and block number, reference to recorded instrument, or any other description that reasonably identifies the real property):

"Dated: .................................................................................................

.................................................................................................

"Filed this the ___ day of _____, .............................................

.................................................................................................................

.....................................................................................................

Clerk of Superior Court"

"Contractor

(3) The form of the notice of subcontract to be so utilized under this section shall be substantially as follows:

"NOTICE OF SUBCONTRACT
"(1) Name and address of the subcontractor:

"(2) General description of the real property where the labor was performed or the material was furnished (street address, tax map lot and block number, reference to recorded instrument, or any description that reasonably identifies the real property):

"(3)

"(i) General description of the subcontractor's contract, including the names of the parties thereto:

"(ii) General description of the labor and material performed and furnished thereunder:

"(4) Request is hereby made by the undersigned subcontractor that he be notified in writing by the contractor of, and within five days following, each subsequent payment by the contractor to the first tier subcontractor for labor performed or material furnished at the improved real property within the above descriptions of such in paragraph (2) and subparagraph (3)(ii), respectively, the date payment was made and the period for which payment is made.

"Dated: .......................................................................................

........................................................................................................

Subcontractor"

(4) The manner of such enforcement shall be as provided by G.S. 44A-7 through G.S. 44A-16. The lien is perfected as of the time set forth in G.S. 44A-10 upon the filing of a claim of lien on real property pursuant to G.S. 44A-12. Upon the filing of the claim of lien on real property, with the notice of claim of lien upon funds attached, and the commencement of the action, no action of the contractor shall be effective to prejudice the rights of the second or third tier subcontractor without his written consent.
 Credits
Added by Laws 1971, c. 880, § 1. Amended by Laws 1985, c. 702, § 4; Laws 1991 (Reg. Sess., 1992), c. 1010, § 1; Laws 1993, c. 553, § 13, eff. July 24, 1993; S.L.1997-456, § 27, eff. Aug. 29, 1997; S.L. 1999-456, § 59, eff. Jan. 1, 2000; S.L. 2005-229, § 1, eff. Oct. 1, 2005.

ADDENDUM II
Relevant statutes in Bankruptcy Code

Add. Page

A.    11 U.S.C. § 362(a)........................................................................A-64

B.    11 U.S.C. § 362(b)........................................................................A-65

C.    11 U.S.C. § 546(b)........................................................................A-70

## 11 U.S.C.A. § 362

§ 362. Automatic stay
Effective: December 22, 2010

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

## 11 U.S.C.A. § 362

§ 362. Automatic stay
Effective: December 22, 2010

**(b)** The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay--

**(1)** under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor;

**(2)** under subsection (a)—

**(A)** of the commencement or continuation of a civil action or proceeding--

**(i)** for the establishment of paternity;

**(ii)** for the establishment or modification of an order for domestic support obligations;

**(iii)** concerning child custody or visitation;

**(iv)** for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate; or

**(v)** regarding domestic violence;

**(B)** of the collection of a domestic support obligation from property that is not property of the estate;

**(C)** with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute;

**(D)** of the withholding, suspension, or restriction of a driver's license, a professional or occupational license, or a recreational license, under State law, as specified in section 466(a)(16) of the Social Security Act;

**(E)** of the reporting of overdue support owed by a parent to any consumer reporting agency as specified in section 466(a)(7) of the Social Security Act;

**(F)** of the interception of a tax refund, as specified in sections 464 and 466(a)(3) of the Social Security Act or under an analogous State law; or

**(G)** of the enforcement of a medical obligation, as specified under title IV of the Social Security Act;

(3) under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title;

(4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power;

[(5) Repealed. Pub.L. 105-277, Div. I, Title VI, § 603(1), Oct. 21, 1998, 112 Stat. 2681-886]

(6) under subsection (a) of this section, of the exercise by a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency of any contractual right (as defined in section 555 or 556) under any security agreement or arrangement or other credit enhancement forming a part of or related to any commodity contract, forward contract or securities contract, or of any contractual right (as defined in section 555 or 556) to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such contracts, including any master agreement for such contracts;

(7) under subsection (a) of this section, of the exercise by a repo participant or financial participant of any contractual right (as defined in section 559) under any security agreement or arrangement or other credit enhancement forming a part of or related to any repurchase agreement, or of any contractual right (as defined in section 559) to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such agreements, including any master agreement for such agreements;

(8) under subsection (a) of this section, of the commencement of any action by the Secretary of Housing and Urban Development to foreclose a mortgage or deed of trust in any case in which the mortgage or deed of trust held by the Secretary is insured or was formerly insured under the National Housing Act and covers property, or combinations of property, consisting of five or more living units;

(9) under subsection (a), of--

(A) an audit by a governmental unit to determine tax liability;

(B) the issuance to the debtor by a governmental unit of a notice of tax deficiency;

(C) a demand for tax returns; or

(D) the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor).

A - 66

(10) under subsection (a) of this section, of any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property;

(11) under subsection (a) of this section, of the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such an instrument;

(12) under subsection (a) of this section, after the date which is 90 days after the filing of such petition, of the commencement or continuation, and conclusion to the entry of final judgment, of an action which involves a debtor subject to reorganization pursuant to chapter 11 of this title and which was brought by the Secretary of Transportation under section 31325 of title 46 (including distribution of any proceeds of sale) to foreclose a preferred ship or fleet mortgage, or a security interest in or relating to a vessel or vessel under construction, held by the Secretary of Transportation under chapter 537 of title 46 or section 109(h) of title 49, or under applicable State law;

(13) under subsection (a) of this section, after the date which is 90 days after the filing of such petition, of the commencement or continuation, and conclusion to the entry of final judgment, of an action which involves a debtor subject to reorganization pursuant to chapter 11 of this title and which was brought by the Secretary of Commerce under section 31325 of title 46 (including distribution of any proceeds of sale) to foreclose a preferred ship or fleet mortgage in a vessel or a mortgage, deed of trust, or other security interest in a fishing facility held by the Secretary of Commerce under chapter 537 of title 46;

(14) under subsection (a) of this section, of any action by an accrediting agency regarding the accreditation status of the debtor as an educational institution;

(15) under subsection (a) of this section, of any action by a State licensing body regarding the licensure of the debtor as an educational institution;

(16) under subsection (a) of this section, of any action by a guaranty agency, as defined in section 435(j) of the Higher Education Act of 1965 or the Secretary of Education regarding the eligibility of the debtor to participate in programs authorized under such Act;

(17) under subsection (a) of this section, of the exercise by a swap participant or financial participant of any contractual right (as defined in section 560) under any security agreement or arrangement or other credit enhancement forming a part of or related to any swap agreement, or of any contractual right (as defined in section 560) to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such agreements, including any master agreement for such agreements;

(18) under subsection (a) of the creation or perfection of a statutory lien for an ad valorem property tax, or a special tax or special assessment on real property whether or not ad valorem, imposed by a governmental unit, if such tax or assessment comes due after the date of the filing of the petition;

(19) under subsection (a), of withholding of income from a debtor's wages and collection of amounts withheld, under the debtor's agreement authorizing that withholding and collection for the benefit of a pension, profit-sharing, stock bonus, or other plan established under section 401, 403, 408, 408A, 414, 457, or 501(c) of the Internal Revenue Code of 1986, that is sponsored by the employer of the debtor, or an affiliate, successor, or predecessor of such employer--

(A) to the extent that the amounts withheld and collected are used solely for payments relating to a loan from a plan under section 408(b)(1) of the Employee Retirement Income Security Act of 1974 or is subject to section 72(p) of the Internal Revenue Code of 1986; or

(B) a loan from a thrift savings plan permitted under subchapter III of chapter 84 of title 5, that satisfies the requirements of section 8433(g) of such title;

but nothing in this paragraph may be construed to provide that any loan made under a governmental plan under section 414(d), or a contract or account under section 403(b), of the Internal Revenue Code of 1986 constitutes a claim or a debt under this title;

(20) under subsection (a), of any act to enforce any lien against or security interest in real property following entry of the order under subsection (d)(4) as to such real property in any prior case under this title, for a period of 2 years after the date of the entry of such an order, except that the debtor, in a subsequent case under this title, may move for relief from such order based upon changed circumstances or for other good cause shown, after notice and a hearing;

(21) under subsection (a), of any act to enforce any lien against or security interest in real property--

(A) if the debtor is ineligible under section 109(g) to be a debtor in a case under this title; or

(B) if the case under this title was filed in violation of a bankruptcy court order in a prior case under this title prohibiting the debtor from being a debtor in another case under this title;

(22) subject to subsection (l), under subsection (a)(3), of the continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor;

(23) subject to subsection (m), under subsection (a)(3), of an eviction action that seeks possession of the residential property in which the debtor resides as a tenant under a lease or rental agreement based on endangerment of such property or the illegal use of controlled substances on such property, but only if the lessor files with the court, and serves upon the debtor, a certification under penalty of perjury that such an eviction action has been filed, or that the debtor, during the 30-day period preceding the date of the filing of the certification, has endangered property or illegally used or allowed to be used a controlled substance on the property;

(24) under subsection (a), of any transfer that is not avoidable under section 544 and that is not avoidable under section 549;

(25) under subsection (a), of--

(A) the commencement or continuation of an investigation or action by a securities self regulatory organization to enforce such organization's regulatory power;

(B) the enforcement of an order or decision, other than for monetary sanctions, obtained in an action by such securities self regulatory organization to enforce such organization's regulatory power; or

(C) any act taken by such securities self regulatory organization to delist, delete, or refuse to permit quotation of any stock that does not meet applicable regulatory requirements;

(26) under subsection (a), of the setoff under applicable nonbankruptcy law of an income tax refund, by a governmental unit, with respect to a taxable period that ended before the date of the order for relief against an income tax liability for a taxable period that also ended before the date of the order for relief, except that in any case in which the setoff of an income tax refund is not permitted under applicable nonbankruptcy law because of a pending action to determine the amount or legality of a tax liability, the governmental unit may hold the refund pending the resolution of the action, unless the court, on the motion of the trustee and after notice and a hearing, grants the taxing authority adequate protection (within the meaning of section 361) for the secured claim of such authority in the setoff under section 506(a);

(27) under subsection (a) of this section, of the exercise by a master netting agreement participant of any contractual right (as defined in section 555, 556, 559, or 560) under any security agreement or arrangement or other credit enhancement forming a part of or related to any master netting agreement, or of any contractual right (as defined in section 555, 556, 559, or 560) to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such master netting agreements to the extent that such participant is eligible to exercise such rights under paragraph (6), (7), or (17) for each individual contract covered by the master netting agreement in issue; and

(28) under subsection (a), of the exclusion by the Secretary of Health and Human Services of the debtor from participation in the medicare program or any other Federal health care program (as defined in section 1128B(f) of the Social Security Act pursuant to title XI or XVIII of such Act).

The provisions of paragraphs (12) and (13) of this subsection shall apply with respect to any such petition filed on or before December 31, 1989.

# 11 U.S.C.A. § 546

§ 546. Limitations on avoiding powers
Effective: December 12, 2006

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of--

(1) the later of--

(A) 2 years after the entry of the order for relief; or

(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

(2) the time the case is closed or dismissed.

(b)(1) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that--

(A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or

(B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.

(2) If--

(A) a law described in paragraph (1) requires seizure of such property or commencement of an action to accomplish such perfection, or maintenance or continuation of perfection of an interest in property; and

(B) such property has not been seized or such an action has not been commenced before the date of the filing of the petition;

such interest in such property shall be perfected, or perfection of such interest shall be maintained or continued, by giving notice within the time fixed by such law for such seizure or such commencement.

ADDENDUM III
Unpublished decisions

<u>Add. Page</u>

A.  *Ferguson Enterprises, Inc. of Virginia v. Mammoth Grading, Inc.*,
    No. 5:10-CV-316-H (E.D.N.C. Feb. 23, 2012) ................................................. A-72

B.  *In re Harrelson Utilities, Inc.*, 51 Bankr. Ct. Dec. 261, 2009 WL 23825870,\*6
    (Bankr. E.D.N.C. July 30, 2009) ...................................................................... A-74

C.  *In re Mammoth Grading, Inc.*, No. 09-01286-8-ATS (Bankr. E.D.N.C.
    July 31, 2009) ................................................................................................. A-81

D.  *In re Shearin Family Investments, LLC*, Case No. 08-07082-8-JRL,
    2009 WL 1076818; 2009 Bankr. LEXIS 2170 (Bankr. E.D.N.C.
    April 17, 2009) ............................................................................................... A-85

FERGUSON ENTERPRISES, INC. OF VIRGINIA, Appellant,
v.
MAMMOTH GRADING, INC., Appellee.
NO. 5:10-CV-316-H
UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH
CAROLINA WESTERN DIVISION
Dated: February 23, 2012

## ORDER
ON APPEAL FROM THE UNITED
STATES BANKRUPTCY COURTFOR
THE EASTERN DISTRICT OF NORTH
CAROLINARALEIGH DIVISION

This matter is before the court on a motion to dismiss the appeal of Ferguson Enterprises, Inc. of Virginia ("Ferguson"), filed by Appellee, Mammoth Grading, Inc. ("Mammoth"). This appeal arises out of the bankruptcy court's orders in two separate cases: In re Harrelson Utilities, Inc., No. 09-02815-8-ATS (E.D.N.C. Bankr. July 30, 2009), and In re Mammoth Grading, Inc., No. 09-01286-8-ATS (E.D.N.C. Bankr, Aug. 24, 2009). Harrelson Utilities, Inc. ("Harrelson") filed a voluntary petition under Chapter 11 of the Bankruptcy Code in April 2009; and Mammoth filed a voluntary petition under Chapter 7 in February 2009.

Ferguson is an unpaid subcontractor who provided labor and materials for the improvement of a number of real estate

Page 2

projects undertaken by Harrelson and Mammoth, severally.[1] After Harrelson filed its bankruptcy petition, Ferguson filed notices of claims of liens on funds due Harrelson and, by subrogation to Harrelson's lien rights, claims of liens on the real property. Likewise, Ferguson filed post-petition notices of claims of liens on funds due Mammoth and, by way of subrogat ion to Mammoth's rights, claims of liens on the real property.

In each case, the bankruptcy court held that the post-petition filing and service of claims of liens and notices of claims of liens filed by Ferguson and other subcontractors violated the automatic stay imposed by 11 U.S.C, § 362. See In re Harrelson Utilities, Inc., No. 09-02815-8-

ATS (E.D.N.C. Bankr. July 30, 2009); In re Mammoth Grading, Inc., No. 09-01286-8-ATS (E.D.N.C. Bankr. Aug. 24, 2009). Ferguson appealed the bankruptcy court's orders in both cases to this court. Four other subcontractors affected by the bankruptcy court's order in In re Mammoth Grading, Inc. also appealed. On August 26, 2010, this court consolidated the Harrelson and Mammoth appeals. With the exception of Ferguson's claim in Mammoth, all claims by the subcontractors have since been settled and the appeals dismissed.

Page 3

On July 29, 2011, Mammoth filed with the bankruptcy court a motion to abandon to Ferguson the bankruptcy estate's claim to funds on deposit with the Clerk of Superior Court of Wake County, North Carolina. On September 12, 2011, this court stayed Ferguson's appeal pending the bankruptcy court's decision on Mammoth's abandonment motion. The bankruptcy court has since allowed Mammoth's motion, ordering that the funds held by the Wake County Clerk be abandoned to Ferguson and that the amount abandoned be credited against Ferguson's claim in the bankruptcy estate. Mammoth now moves to dismiss Ferguson's appeal, arguing that the abandonment of these funds, which represent the total amount in controversy on appeal, renders Ferguson's appeal moot.

## COURT'S DISCUSSION

North Carolina subcontractors supplying labor or materials for construction projects have long operated upon the assumption that Chapter 44A of the North Carolina General Statutes provides them with inchoate lien rights that arise upon the furnishing of work or materials. Cf. Equitable Life Assurance SoC y of U.S. v. Basnight, 234 N.C. 347, 352 (1951) ("A

contractor's lien on real property is inchoate until perfected by compliance with legal requirements, and is lost if the steps required for its perfection are not taken in the manner and within the time prescribed by law.").

Page 4

The bankruptcy court below held that a subcontractor's lien rights do not constitute "an interest in property" within the meaning of Bankruptcy Code Section 362(b) {3}'s exception to the automatic stay, see 11 U.S.C. § 362(b) (3) (excepting from the automatic stay imposed by § 362(a) (4) acts to perfect a preexisting "interest in property"), and that post-petition claims of liens and notices of claims of liens are invalid and unenforceable. In so ruling, the bankruptcy court has turned the construction industry's standard operating procedure on its head.

This court questions whether the bankruptcy court's rulings below are in accord with North Carolina statutory law and the constitutional protections afforded laborers and materialmen by Article X Section 3 of the North Carolina Constitution. Specifically, the court is concerned that the bankruptcy court may have erred in determining that a lien under Chapter 44A, Article 2, Part 2, of the North Carolina General Statutes does not arise until the filing of a notice of claim of lien by the subcontractor. Nevertheless, the court is constrained to dismiss Ferguson's appeal, as the bankruptcy trustee's surrender of the funds comprising Ferguson's claim against the estate renders this appeal moot. See Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992) ("[I]f an event occurs

Page 5

while a case is pending on appeal that makes it impossible for the court to grant *any effectual relief whatever' to a prevailing party, the appeal must be dismissed.").

When a civil action becomes moot pending appeal, the established practice is to vacate the judgment below "to ensure that 'those who have been prevented from obtaining the review to which they are entitled [are] not . . . treated as if

there had been a review. ' " Camreta v. Greene, 131 S. Ct. 2020, 2025 (2011) (quoting United States v. Munsingwear, Inc., 340 U.S. 36, 39 (1950)) (alteration in original). The court finds vacatur especially appropriate where, as in this case, the appeal is rendered moot not by mere happenstance, but by the bankruptcy trustee's unilateral surrender of estate property. U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 25 (1994) ("A party who seeks review of the merits of an adverse ruling but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgement. The same is true when mootness results from unilateral action of the party who prevailed below." (citation omitted)).

## CONCLUSION

For the foregoing reasons, the bankruptcy court's decision below in In re Mammoth Grading, Inc., No. 09-01286-8-ATS (E.D.N.C. Bankr. filed Aug. 24, 2009), is hereby vacated and

Page 6

this matter is remanded to the United States Bankruptcy Court The clerk is directed to close this case.

_____
MALCOLM        J.        HOWARD
Senior United States District Judge

At            Greenville,            NC
#31

--------

Notes:

1. Ferguson was a first-tier subcontractor on some projects and a second-tier subcontractor on others.

--------

**Page 1**

**IN RE: HARRELSON UTILITIES, INC. DEBTOR.**
**Case No. 09-02815-8-ATS.**
**United States Bankruptcy Court, E.D. North Carolina, Raleigh Division.**
**July 30, 2009.**

**ORDER DETERMINING THAT THE AUTOMATIC STAY WAS VIOLATED, DENYING REQUEST FOR SANCTIONS, AND DISMISSING MOTIONS FOR RELIEF FROM AUTOMATIC STAY**

**A. THOMAS SMALL, Bankruptcy Judge**

There are several related matters before the court, including (1) the motions filed by the chapter 11 debtor in possession, Harrelson Utilities, Inc., for sanctions against Ferguson Enterprises, Inc., and Smith Setzer & Sons, Inc. for violating the automatic stay by filing notices claiming statutory labor and materialmen's liens; and, (2) the motions of Ferguson, Smith Setzer, S.T. Wooten Corporation and Tindall Corporation for relief from the automatic stay to file notices of and to enforce their statutory liens for labor and materials. A hearing was held on July 2, 2009, at which the court considered these motions as well as similar motions for relief from the automatic stay involving the same issues in the chapter 7 case of Mammoth Grading, Inc., Case. No. 09-01286-8-ATS.

The facts are not disputed. Harrelson is a utilities contractor that filed a petition for relief under chapter 11 on April 6, 2009, and is operating as a debtor in possession. Ferguson, Smith

Page 2

Setzer, S.T. Wooten and Tindall are unpaid subcontractors that did work for Harrelson on various projects. On most of the projects Harrelson was the contractor and the lien claimants were the debtor's "first tier" subcontractors. At times, Harrelson was a first tier subcontractor and the lien claimants were Harrelson's "second tier" subcontractors.[1]

Harrelson contends that Ferguson and Smith Setzer violated the automatic stay provided by § 362(a)(4) by filing postpetition notices pursuant to North Carolina General Statutes § 44A-19, claiming statutory labor and materialmen's liens under § 44A-18 against funds due to Harrelson, and by filing notices pursuant to § 44A-12 claiming, by subrogation under § 44A-23(a) and (b), Harrelson's labor and materialman's liens against real property on which Harrelson and the subcontractors did work. The subcontractors maintain that they did not violate the automatic stay because the notices they gave were permitted by § 362(b)(3), which provides an exception to § 362(a)(4). If the court determines that the stay does apply to the notices, Ferguson, Setzer Smith,

Page 3

S.T. Wooten, and Tindall ask for relief from the automatic stay to file the notices and to enforce their liens.

The resolution of the important and complex issues raised by these motions requires an analysis of both the rights given to laborers and materialmen under North Carolina law and the protections provided by the Bankruptcy Code to the estates of debtors. Whether the § 362(b)(3) exception to the automatic stay applies is a matter of federal bankruptcy law, but that determination depends on a question of North Carolina state law that comes down to when the interests of subcontractors are created in the funds owed to the contractor. If the lien right on funds owed to a contractor of a subcontractor is created *prior* to the giving of the notice of lien, the exception applies, but if the lien right is created *by* the giving of the notice, it does not.

Section 362(a)(4) of the Bankruptcy Code provides that a petition for relief operates as a stay of "any act to create, perfect, or enforce any lien against property of the estate." Funds owed

In re Harrelson Utilities, Inc., Case No. 09-02815-8-ATS (Bankr.E.D.N.C. 7/30/2009) (Bankr.E.D.N.C., 2009)

to the debtor pursuant to a construction contract are property of the estate and are protected from "any act to create, perfect, or enforce any lien against property of the estate," unless the act comes within the exception afforded by § 362(b)(3). Section 362(b)(3) provides that a petition does not operate as a stay "of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of" title 11.

Section 546(b) provides

The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that—

(A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or

Page 4

(B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.

11 U.S.C. § 546(b)(1).

Both § 362(b)(3) and § 546(b) refer to "an interest in property," a phrase that encompasses more than a "lien." See Maryland Nat'l Bank v. Mayor of Baltimore (In re Maryland Glass Corp.), 723 F.2d 1138, 1141-42 (4th Cir. 1983) ("section 546(b) speaks of an `interest in property' and does not limit its scope to `liens'"). In determining whether the exception of § 362(b)(3) applies, the court must consider what interest the creditor had in property before the petition was filed and the effect of that interest on a hypothetical purchaser who might have purchased the property before the creditor's "interest was fully perfected and enforceable by

virtue of a statutory lien." 723 F.3d at 1142. Whether the subcontractors had an "interest in property," the perfection of which could be effective against an entity that acquired rights in the property prior to the date of perfection, is an issue to be determined by state law. Butner v. United States, 440 U.S. 48, 55, 99 S. Ct. 914, 918 (1979).

The North Carolina Constitution, Article X, Section 3, provides that "[t]he General Assembly shall provide by proper legislation for giving to mechanics and laborers an adequate lien on the subject-matter of their labor," and Chapter 44A of the General Statutes provides protection for contractors in the form of liens on the real property for which they provided labor or materials. Protection is provided for subcontractors through the right to claim a lien upon funds owed to the contractor and to assert, through subrogation, the contractor's right to file liens against real property.

Chapter 44A, Article 2, Part 1 sets forth the rights and remedies of general contractors. "Any person who performs or furnishes labor . . . or furnishes materials . . . pursuant to a contract, either

Page 5

express or implied, with the owner of real property for the making of an improvement thereon shall, upon complying with the provisions of this Article, have a right to file a claim of lien on the real property to secure payment of all debts owing for labor done . . . or material furnished . . . pursuant to the contract." N.C. Gen. Stat. § 44A-8. A claim of lien on real property is perfected upon the filing of the lien within 120 days after the last furnishing of labor or materials, and is enforced by the filing of an action within 180 days after the last furnishing of labor or materials. N.C. Gen. Stat. §§ 44A-12; 44A-13. The claim of lien relates back to the time of the first furnishing of labor or materials by the person claiming the lien. N.C. Gen. Stat. § 44A-10. A contractor's lien has priority over any liens or encumbrances that arise after the date of the contractor's first furnishing of labor or materials to the site. Frank H. Conner Co. v.

In re Harrelson Utilities, Inc., Case No. 09-02815-8-ATS (Bankr.E.D.N.C. 7/30/2009) (Bankr.E.D.N.C., 2009)

Spanish Inns Charlotte, Ltd., 294 N.C. 661, 242 S.E.2d 785 (1978).

Chapter 44A, Article 2, Part 2 provides for two lien rights for subcontractors: (1) a claim of lien upon funds owed to the contractor, and (2) the right to assert, by subrogation, the lien rights of the contractor against the real property owned by the party for whom the contract is being performed. A first tier subcontractor may claim a lien on the funds owed to the contractor and may also, by subrogation, assert the contractor's lien against the real property. Section 44A-18(1) provides:

Upon compliance with this Article:

(1) A first tier subcontractor who furnished labor, materials, or rental equipment at the site of the improvement shall be entitled to a lien upon funds that are owed to the contractor with whom the first tier subcontractor dealt and that arise out of the improvement on which the first tier subcontractor worked or furnished materials.

Section 44A-23(a) provides, in relevant part, that a "first tier subcontractor, who gives notice of claim of lien upon funds as provided in this Article, may, to the extent of this claim, enforce the

Page 6

claim of lien on real property of the contractor created by Part 1 of this Article." N.C. Gen. Stat. § 44A-23(a).

A second tier subcontractor may claim a lien on the funds owed to the first tier subcontractor and may by subrogation assert the first tier contractor's lien on funds and its subrogation lien rights against real property.

(2) A second tier contractor who furnished labor, materials, or rental equipment at the site of the improvement shall be entitled to a lien upon funds that are owed to the first tier subcontractor with whom the second tier subcontrator dealt and that arise out

of the improvement on which the second tier subcontractor worked or furnished materials.

A second tier subcontractor, to the extent of the second tier subcontractor's lien provided in this subdivision, shall also be entitled to be subrogated to the lien of

the first tier subcontractor with whom the second tier contractor dealt provided for in subdivision (1) of this section and shall be entitled to perfect it by notice of claim of lien upon funds to the extent of the claim.

N.C. Gen. Stat. § 44A-18(2). Section 44A-23(b) provides, in relevant part, that a "second or third tier contractor, who gives notice of claim of lien upon funds as provided in this Article, may, to the extent of his claim, enforce the claim of lien on real property of the contractor created by Part 1 of Article 2." N.C. Gen. Stat. § 44A-23(b).

Pursuant to § 44A-18(6), a subcontractor's lien on funds "is perfected upon the giving of notice of claim of lien upon funds in writing to the obligor as provided in G.S. 44A-19 and shall be effective upon the obligor's receipt of the notice." N.C. Gen. Stat. § 44A-18(6). The subcontractor's subrogation liens are perfected in accordance with the requirements of § 44A-23. N.C. Gen. Stat. § 44A-18(6).[2] Pursuant to § 44A-19(d), "[n]otices of claims of lien upon funds under this section

Page 7

shall be served upon the obligor by personal delivery or in any manner authorized by Rule 4 of the North Carolina Rules of Civil Procedure. A copy of the notice of claim of lien upon funds shall be attached to any claim of lien on real property filed pursuant to G.S. 44A-20(d) or G.S. 44A-23."

Unlike a lien on real property, which, based on the effective date provision of § 44A-10, has priority over claims against the real estate filed after the date on which labor or materials were first furnished, a subcontactor's lien on funds has priority ahead of all other interests whenever created. Section 44A-22 provides that properly perfected liens upon funds

In re Harrelson Utilities, Inc., Case No. 09-02815-8-ATS (Bankr.E.D.N.C. 7/30/2009) (Bankr.E.D.N.C., 2009)

have priority over all other interests or claims theretofore or thereafter created or suffered in the funds by the person against whose interest the lien upon funds is asserted, including, but not limited to, liens arising from garnishment, attachment, levy, judgment, assignments, security interests, and any other type of transfer, whether voluntary or involuntary.

N.C. Gen. Stat. § 44A-22.

If insufficient funds are available to satisfy all subcontractors that have asserted claims against the funds owed the contractor, the claimants, pursuant to § 44A-21, receive payment pro rata.

(a) Where the obligor is a contractor or subcontractor and the funds in the hands of the obligor and the obligor's personal liability, if any, under G.S. 44A-20 are less than the amount of valid liens upon funds that have been received by the obligor under this Article, the parties entitled to liens upon funds shall share the funds on a pro rata basis.

(b) Where the obligor is an owner and the funds in the hands of the obligor and the obligor's personal liability, if any, under G.S. 44A-20 are less than the sum of the amount of valid claims of liens upon funds that have been received by the obligor under this Article and the amount of the valid claims of liens on the real property upon the owner's property filed by the subcontractors with the clerk of superior court under G.S. 44A-23, the parties entitled to liens upon funds and the parties entitled

Page 8

to subrogation claims of liens on real property upon the owner's property shall share the funds on a pro rata basis.

N.C. Gen. Stat. § 44A-21.

North Carolina law gives a priority to subcontractors with properly perfected liens on funds, but subcontractors are not given an "interest" in the funds prior to time they give

notice of their liens pursuant to §§ 44A-18(6) and 44A-19(d). The North Carolina Supreme Court addressed the question of when the subcontractor's interest in funds arises in Contract Steel Sales, Inc. v. Freedom Construction Co., 321 N.C. 215, 362 S.E.2d 547 (1987), and, interestingly, the debtor and all the subcontractors maintain that this case supports their respective positions. In fact, all parties cite to the same language:

The subcontractor must prove performance of his contract to enforce the lien, but he need not show such performance in order to assert his entitlement to a lien. For this entitlement, he need only show that the materials were delivered to the site of the improvement. Having made such a showing here, [the subcontractor] is entitled to its lien if it is properly perfected . . . .

Contract Steel, 321 N.C. at 220, 362 S.E.2d at 550-51. The subcontractors focus on the idea that *entitlement* to a lien is created upon the delivery of the materials, and that the entitlement is the interest that is allowed to be perfected pursuant to § 362(b)(3). The debtor, however, focuses on the holding that a subcontractor is entitled to a lien *if it is properly perfected.*

"Entitlement" to a lien is not the same as an interest in property. The entitlement to claim a lien on funds due a contractor has no value until the subcontractor gives notice of the claim of lien. Until notice is given, the obligor may pay sums directly to the contractor, and if that is done, there are no funds available to which a lien may attach. On any given day, there may or may not be any funds owed to the contractor on which the subcontractor could claim a lien. The lien on funds is empty, imprecise, indeterminate and illusive, and, in essence, it does not exist until notice is served

Page 9

on the obligor pursuant to § 44A-19(d). Until that time, the obligor is free to ignore a subcontractor's "entitlement" to the funds.

In re Harrelson Utilities, Inc., Case No. 09-02815-8-ATS (Bankr.E.D.N.C. 7/30/2009)
(Bankr.E.D.N.C., 2009)

Put another way, a subcontractor's lien on funds is much like a tax lien on personal property, and like a tax lien on personal property, there is no prior interest in property established for a claim of lien on funds to perfect. Maryland Glass, 723 F.2d at 1144 n.14 (discussing In re New England Carpet Co., 26 B.R. 934 (Bankr. D. Vt. 1983), and Geiger v. City of Southfield (In re Continental Credit Corp.), 1 B.R. 680 (Bankr. N.D. Ill. 1979), and distinguishing real property liens from personal property liens). The postpetition creation of the statutory lien is not the "perfection" of a pre-existing interest, but the creation of an interest for the first time, Maryland Glass, 723 F.2d at 1144 n.14 (discussing New England Carpet Co., 26 B.R. 934). Accordingly, filing postpetition notices of liens on funds due to a contractor does not fall within the exception to the automatic stay provided by § 362(b)(3). For that reason, the subcontractors who served claims of lien on funds postpetition violated the automatic stay in doing so.

There undoubtedly are strong policy arguments on both sides of this issue. The subcontractors are correct that the mechanic's lien, which is mentioned in North Carolina's Constitution, "has long been recognized as a fundamental tenet of North Carolina law." Ferguson Brief at 4. The subcontractors also predict that if this court concludes that giving a postpetition notice of a claim of lien on funds violates the automatic stay, it will create havoc in the construction industry. According to the subcontractors, their future efforts to avoid the consequences of a contractor's bankruptcy will require them to give notices of liens upon delivery of materials, rather than waiting to see if they get paid. The subcontractors warn that once liens are filed, the flow of construction funds will stop. Further, the subcontractors maintain, any subcontractor who has

Page 10

advance notice that a contractor is having financial difficulties may be able to perfect its liens prepetition and gain an unfair advantage over those subcontractors who did not have the

benefit of inside information, and did not file notice of their liens prior to the contractor's bankruptcy.

From the bankruptcy perspective, disallowing the postpetition liens furthers an important guiding principle for all bankruptcy courts, which was recently emphasized by the United States Supreme Court in Howard Delivery Serv., Inc. v. Zurich American Ins. Co., 547 U.S. 651, 126 S. Ct. 2105 (2006). The Court stated that "the Bankruptcy Code aims, in the main, to secure equal distribution among creditors," 126 S. Ct. at 2109, and "any doubt concerning the appropriate characterization [of a claim] . . . is best resolved in accord with the Bankruptcy Code's equal distribution aim." 126 S. Ct. at 2116.

In the final analysis, however, these persuasive policy arguments cannot alter the construction of the relevant statutes.

Having determined that the exception to the automatic stay in § 362(b)(3) does not apply to the giving of notice of the claim of a subcontractor's lien on funds owed to a contractor who is a debtor in bankruptcy, the court must determine whether a subcontractor may nonetheless file, pursuant to its subrogation rights, a lien on real property. Section 44A-23(a) provides, in relevant part, that a "first tier subcontractor, *who gives notice of claim of lien upon funds* as provided in this Article, may, to the extent of this claim, enforce the claim of lien on real property of the contractor created by Part 1 of this Article." N.C. Gen. Stat. § 44A-23(a) (emphasis added). Section 44A-23(b) provides, in relevant part, that a "second or third tier subcontractor, *who gives notice of claim of lien upon funds* as provided in this Article, may, to the extent of his claim, enforce the claim of lien on real property of the contractor created by Part 1 of Article 2" N.C. Gen. Stat. § 44A-23(b)

Page 11

(emphasis added). Pursuant to § 44A-19(d), "[a] copy of the notice of claim of lien upon funds shall be attached to any claim of lien on real property filed pursuant to G.S. 44A-20(d) or

In re Harrelson Utilities, Inc., Case No. 09-02815-8-ATS (Bankr.E.D.N.C. 7/30/2009) (Bankr.E.D.N.C., 2009)

G.S. 44A-23." The language of the statute is clear that in order to enforce the contractor's lien rights on the real property, the subcontractor must first have given notice of its claim of lien on funds. See also Cameron & Barkley Co. v. American Ins. Co., 112 N.C. App. 36, 45, 434 S.E.2d 632, 637 (1993) (trial court correctly held that it was necessary for subcontractor to give notice in accordance with the form specified in § 44A-19 for a claim of lien affecting title to real estate); Mace v. Bryant Constr. Co., 48 N.C. App. 297, 307, 269 S.E.2d 191, 196 (1980) ("the existence of a lien upon the realty granted by G.S. 44A-20(d) is dependent upon the existence of a valid lien upon funds").

Claims of liens on funds served in violation of the automatic stay are void, and because the subcontractors have not given valid notices of claims of lien on funds, they cannot file claims of lien on real property. Accordingly, the postpetition claims of lien on real property filed by the subcontractors are invalid and cannot be enforced. Because the liens on real property are unenforceable, the subcontractors' requests to enforce these liens are **DENIED**.

The debtor maintains that these stay violations were willful and that sanctions should be imposed pursuant to § 362(k). The court disagrees. The subcontractors were doing what subcontractors in North Carolina have been doing for years. Their actions in filing postpetition liens on funds owed to the debtor and asserting by subrogation Harrelson's lien rights in real property are consistent with their reasonable understanding of the law. In fact, earlier in the case, the debtor and the subcontractors, based on that understanding, were negotiating a consent order that would have permitted a recognition of the subcontractors' liens.

Page 12

The issue of whether the postpetition claims of lien violated the automatic stay came to light because of a decision in the case of In re Shearin Family Investments, LLC, Case No. 08-07082-8-JRL, 2009 WL 1076818 (Bankr. E.D.N.C. April 17, 2009). In that opinion the

court observed that the "text of the statute [§ 44A-18(1) and (6)] suggests that no lien [on funds] arises until it is perfected by giving written notice and made effective by receipt." Shearin, at *2. The court in Shearin held, as the court in this case now holds, that a subcontractor's interest or lien on funds owed to the contractor is not effective and is therefore not created until the notice has been given to the obligor, and that the exception to the automatic stay of § 362(b)(3) does not authorize subcontractors to give notice of their liens on funds owed to the contractor after the contractor has filed for bankruptcy relief.

The debtor argues that at a minimum those subcontractors who filed their liens after learning of the opinion in Shearin should be sanctioned. Although the holding in Shearin is clear enough, it is not directly applicable to the facts of this case.[3] Because the lien claimants had a reasonable belief that they were not violating the automatic stay, sanctions will not be imposed. Accordingly, the debtor's request for sanctions is **DENIED.** However, the claims of lien that appear on the public

Page 13

record must be withdrawn by the subcontractors. Furthermore, this opinion is without prejudice to any claim the debtor may have based on the giving of notice with respect to the wrong property.

In conclusion, § 362(b)(3) does not except from the automatic stay of § 362(a)(4) the giving of notice by subcontractors to perfect mechanics and materialmen's liens on funds due to a debtor who is their contractor. The subcontractors violated the automatic stay by giving lien notices on funds owed to the debtor. Those lien notices are invalid and must be removed from the record. The notices of lien by subrogation on real property are also invalid and shall be removed by the subcontractors. Sanctions for violating the automatic stay will not be imposed, and the motions of the subcontractors for relief from the automatic stay are **DENIED.**

**SO ORDERED.**

In re Harrelson Utilities, Inc., Case No. 09-02815-8-ATS (Bankr.E.D.N.C. 7/30/2009)
(Bankr.E.D.N.C., 2009)

----------------

Notes:

1. Ferguson acted as a first or second tier subcontractor on five projects, and contends it is owed $450,000. Ferguson served notices of claims of liens on funds due Harrelson and filed, by subrogation to Harrelson's lien rights, claims of liens on real property on April 21, April 23, and April 27, 2009. Ferguson seeks relief from the automatic stay to enforce the liens on real property pursuant to North Carolina law. Smith Setzer acted as a first or second tier subcontractor on five projects, and contends it is owed approximately $112,332.52. Smith Setzer served notices of claims of liens on funds due Harrelson and filed, by subrogation to Harrelson's lien rights, claims of liens on real property on May 19, 2009; it seeks relief from the automatic stay to enforce the liens on real property. Tindall acted as a second tier subcontractor for the improvement of two parcels of property, and contends it is owed $20,995.03. Tindall served a notice of claim of lien on funds due Harrelson on May 19, 2009, and filed, by subrogation to Harrelson's lien rights, a claim of lien on real property on May 26, 2009. It seeks relief from the automatic stay to enforce its lien on real property. S.T. Wooten acted as a first or second tier subcontractor on five projects, and contends it is owed $11,804.88. S.T. Wooten seeks relief from the automatic stay to serve notices of claim of liens on funds due Harrelson and to file, by subrogation to Harrelson's lien rights, and enforce claims of liens on real property.

2. Section 44A-18(6) provides in full:

(6) A lien upon funds granted under this section is perfected upon the giving of notice of claim of lien upon funds in writing to the obligor as provided in G.S. 44A-19 and shall be effective upon the obligor's receipt of the notice. The subrogation rights of a first, second, or third tier subcontractor to the claim of lien on real property of the contractor created by Part 1 of Article 2 of this Chapter are perfected as provided in G.S. 44A-23.

3. The facts in Shearin are much different than those before the court in this case. Shearin was the landowner/developer, not a contractor like Harrelson. It can be argued that, in that case, § 362(a)(4) did not stay the subcontractors from filing claims against funds owed to their contractor because the contractor was not in bankruptcy and was not protected by the stay. The funds owed to the contractor by Shearin were not property of the debtor's bankruptcy estate; rather, they were an obligation of the estate. An argument could also be raised that the subcontractors were stayed by § 362(a)(4) from filing lien notices against funds due to their contractor, because the notices were merely part of their main objective, which was to file liens against the debtor's real property. The question of whether § 362(a)(4) precludes subcontractors from filing their lien notices against funds was not raised in Shearin, and the suggested arguments were not made. In any event, that issue is not present in this case because, clearly, the funds owed to Harrelson are property of the debtor's estate and subcontractors are stayed by § 362(a)(4) from asserting their liens against them.

----------------

**SO ORDERED.**

**SIGNED this 31 day of July, 2009.**



A. Thomas Small
United States Bankruptcy Judge

---

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **MAMMOTH GRADING, INC.** | **09-01286-8-ATS** |
| **DEBTOR** | |

**ORDER REGARDING MOTIONS FOR RELIEF FROM STAY**

The matters before the court are the motions for relief from the automatic stay filed by Ferguson Enterprises, Inc., HD Supply Waterworks, General Concrete Construction, Wake Stone Corporation, and Fortress Fencing, LLC. A hearing was held on July 2, 2009, at which the court considered these motions as well as similar motions for relief from the automatic stay involving the same issues in the chapter 11 case of Harrelson Utilities, Inc., Case. No. 09-02815-8-ATS.

Mammoth Grading, Inc. filed a petition for relief under chapter 7 of the Bankruptcy Code on February 18, 2009, and Joseph N. Callaway was appointed trustee. Prior to filing, the debtor operated as a grading contractor on various projects. Ferguson, HD Supply, General Concrete, Wake Stone, and Fortress Fencing are unpaid subcontractors that did work for the debtor on several projects who now seek to enforce their lien rights pursuant to North Carolina law. On some of the projects Mammoth was the contractor and the lien claimants were the debtor's "first tier" subcontractors. At other times, Mammoth was a first tier subcontractor and the lien claimants were

A - 81

Mammoth's "second tier" subcontractors. Paragon Bank maintains that it holds a first priority perfected security interest in the debtor's accounts receivable.

Ferguson acted as a first or second tier subcontractor on two projects, and contends it is owed $31,309.11. On February 24 and March 6, 2009, Ferguson served notices of claims of liens on funds due Mammoth and filed, by subrogation to Mammoth's lien rights, claims of liens on real property. Ferguson seeks relief from the automatic stay to enforce the liens on real property pursuant to North Carolina law. HD Supply acted as a first or second tier subcontractor on six projects, and contends it is owed approximately $497,212.18. On February 26, February 27, March 23, March 24, and May 4, 2009, HD Supply served notices of claims of liens on funds due Mammoth and filed, by subrogation to Mammoth's lien rights, claims of liens on real property. HD Supply seeks relief from the automatic stay to enforce the liens on real property.

General Concrete acted as a first or second tier subcontractor on four projects and contends it is owed approximately $175,784.88. On February 20, 2009, for the project at The Villas at Centerview, General Concrete served a notice of claim of lien on funds due Mammoth and filed, by subrogation to Mammoth's lien rights, claims of lien on real property. General Concrete subsequently filed an action to enforce its claim of lien on the real property, naming the debtor as a defendant. General Concrete filed a motion for retroactive relief from the automatic stay to proceed with the action to enforce the lien. Also on February 20, General Concrete served notices of claims of liens on funds due Mammoth and filed, by subrogation to Mammoth's lien rights, claims of lien on real property with respect to three other projects. General Concrete seeks relief from the automatic stay to enforce the liens on real property.

2

Wake Stone acted as a first tier subcontractor on one project, and contends it is owed $57,609.32. On February 17, 2009, one day prior to Mammoth's bankruptcy, Wake Stone served notices of claims of liens on funds due Mammoth and on March 12, 2009, filed, by subrogation to Mammoth's lien rights, claims of liens on real property. Wake Stone seeks relief from the automatic stay to enforce the liens on real property.

Fortress Fencing acted as a first tier subcontractor on one project, and contends it is owed $19,402.50. On March 2, 2009, Fortress served notices of claims of lien on funds due Mammoth and filed, by subrogation to Mammoths' lien rights, claims of lien on real property. Fortress seeks relief from the automatic stay to enforce the liens on real property.[1]

The trustee and Paragon oppose the motions for relief from the automatic stay. Paragon contends that its security interest in the funds owed Mammoth has priority over the liens claimed by the subcontractors. Both Paragon and the trustee maintain that, with the exception of Wake Stone, the claims of liens on funds were served postpetition and, because they violated the automatic stay, are invalid. Furthermore, the subrogation liens on real property are also invalid because they are not supported by a valid lien on funds. Rather than allowing relief from the stay to enforce the liens, Paragon and the trustee maintain, the court should find that the liens are void. With respect to Wake Stone, the trustee contends that the service of the notice of lien on funds filed the day prior to the petition for relief constitutes an avoidable preference, and thus the related lien on real estate should not be allowed.

---

[1] Because of filing deadlines set out in the North Carolina lien statutes, the parties entered consent orders allowing the subcontractors to file actions to enforce the claims of liens on real property, but those actions were to be held in abeyance pending the entry of this order.

3

After a thorough analysis of the legal arguments set forth by the parties in both this case and in Harrelson Utilities, the court in an order entered in the Harrelson case on July 30, 2009, held that serving a notice of claim of lien on funds due to the debtor postpetition violates the automatic stay under § 362(a)(4) of the Bankruptcy Code. Accordingly, postpetition notices filed by the subcontractors in this case violated the automatic stay and are void. As discussed in <u>Harrelson</u>, liens filed by subcontractors against the real property must be supported by valid liens on funds due to the contractor, and if the liens on the funds are invalid, so are the liens against the real property. The motions for relief from the automatic stay to file notices of liens on funds and to file subrogation liens on real property and enforce the subrogation liens on real property are **DENIED**. All of the liens of record should be withdrawn, and the state court actions filed to enforce the liens on real property should be dismissed.

Wake Stone served its notices of liens on funds prepetition, and, at this point, those liens are valid. Wake Stone's subrogation liens on real property are liens on property that is not property of the estate, and the action to enforce the lien is not stayed by § 362(a)(4). Because Wake Stone is required to name the debtor as a defendant in the enforcement action, but is not seeking relief against the debtor, Wake Stone's motion for relief from the automatic stay is **ALLOWED**. Wake Stone's liens may or may not be subject to avoidance by the trustee, but that issue will be addressed in an adversary proceeding to avoid the alleged preferences, if one is filed.

**SO ORDERED.**

**END OF DOCUMENT**

4

A - 84

2009 WL 1076818
Only the Westlaw citation is currently
available.
United States Bankruptcy Court, E.D. North
Carolina,
New Bern Division.

In re SHEARIN FAMILY INVESTMENTS,
LLC, Debtor.
No. 08–07082–8–JRL. | April 17, 2009.

### Attorneys and Law Firms

Amy M. Currin, Trawick H. Stubbs, Jr., Stubbs
& Perdue, P.A., New Bern, NC, Laurie B. Biggs,
Stubbs & Perdue, P.A., Todd A. Jones,
Anderson, Jones & Gengo, PLLC, Raleigh, NC,
for Debtor.

### Opinion

### SUPPLEMENTAL ORDER

J. RICH LEONARD, Bankruptcy Judge.

*1 On March 18, 2009, this court, recognizing
the need for an immediate resolution, entered a
summary order allowing the joint motion to
establish procedure for distribution of certain
post-petition funds. The present order further
outlines the court's reasoning for its finding that
the claims of lien on funds were stayed by § 362
of the Bankruptcy Code.

### BACKGROUND

The debtor filed for relief under Chapter 11 of
the Bankruptcy Code on October 13, 2008.
Throughout its case, the debtor has operated as a
debtor-in-possession developing a condominium
project in Indian Beach, North Carolina known
as the Nautical Club (the "Nautical Club
Project"). Centurion Construction Company, Inc.
("Centurion") was hired to perform as the
general contractor for the construction of the
Nautical Club Project. On February 18, 2009,
this court approved post-petition financing from
the lender RBC Real Estate Finance, Inc.
("RBC") in the amount of $8,000,000.00 to
complete construction. The portion of the post-
petition financing owing to Centurion was
$830,144.15. Centurion's only means for
completing the project was to pay certain key
subcontractors whose contributions were vital to
finishing construction.

Between December 2008 and January 2009,
subcontractors, including Vision Painting, Inc.,
Gouras, Inc., and Carpets by Thad, Inc. (the
"Lien Claimants"), served the debtor with
notices of claims of lien on funds in the
approximate amount of $796,116.09. The Lien
Claimants were not among those subcontractors
Centurion contemplated paying from its post-
petition financing budget. The Lien Claimants
argued that their liens on funds, which were
served post-petition, were actually effective from
their commencement of work on the project pre-
petition. The Lien Claimants further argued that
should the court find otherwise, it would allow
the debtor to unfairly pick and choose who it
would pay since no "key subcontractors" served
notice of claims of liens on funds pre-petition.
The debtor asserted that it could disregard the
claims of lien on funds pursuant to the automatic
stay. By court instruction, the parties submitted
memoranda of law on the issue of whether the
rights of the Lien Claimants arising from the
notices of claims of lien on funds were stayed by
§ 362 of the Bankruptcy Code. Upon review of
the submitted memoranda, North Carolina state
law, and the Bankruptcy Code, this court held
that claims of lien served post-petition were
stayed by § 362.

### DISCUSSION

Two types of Mechanic's liens involving real
property are authorized by North Carolina law:
1) A Claim of Lien on Real Property; and 2) A
Notice of Claim of Lien Upon Funds. A Claim of
Lien on Real Property, pursuant to N.C.G.S. §
44A–8, is for the benefit of parties who contract
directly with the owner of the property being
improved. However, first, second, and third tier
subcontractors are not in direct contract with a
property owner, dealing instead with the general
contractor. Although subcontractors find
themselves "down the chain," statutory
provisions protect their interests by allowing
those in the first through third tiers to assert a

lien upon funds owed to the contractor with whom they dealt if they furnished labor, materials, or rental equipment to the site of the improvement. N.C.G.S. § 44A-18.

*2 Pursuant to N.C.G.S. § 44A-20, once notice of a claim of lien on funds has been received, the obligor has a duty to retain funds subject to the lien, up to the amount of the lien claimed. An obligor may be the owner, a contractor, or subcontractor in any tier who owes money to another for performance on a contract to improve real property. N.C.G.S. § 44A17(3). If the obligor fails to reserve the funds and makes a payment against the interest of the lien claimants, then the obligor becomes personally liable to the lien claimants for the amount of the wrongfully distributed payments not exceeding the lien. N.C.G. S. § 44A-20(b).

Following this line of reasoning, the Lien Claimants argued that the debtor, as the obligor of the Nautical Club Project and having received notice of the claims of lien on funds, must reserve approximately $796,116.09 from the $830,144.15 post-petition financing allotted to Centurion. The Lien Claimants failed, however, to take into account the automatic stay operating within the debtor's bankruptcy case.

The debtor filed its Chapter 11 petition in October, 2008. At the time of filing, the automatic stay under 11 U.S.C. § 362 came into effect. Section 362(a)(4) stays any action to create, perfect, or enforce any lien against property of the estate. An exception to the rule is carved out by § 362(b)(3), which allows perfection of a lien to "relate-back" to the time of lien creation. Retroactive perfection thus supersedes the rights of the trustee or hypothetical bona fide purchaser to the extent that the strong arm powers are subject to perfection under § 546(b) or perfection is achieved within the grace period of § 547(e)(2)(A). 3 Collier on Bankruptcy (15th ed. rev.) ¶ 362.03[6][a]. Here, the Lien Claimants did not fit the exception. "Post-petition perfection of a lien is permitted by the [Bankruptcy] Code but post-petition creation of a lien is not." *In re Kara Homes, Inc.*, 374 B.R. 542, 555 (Bankr.D.N.J.2007); 11 U.S.C. § 546(b)(1)(A)-(B); 3 Collier on Bankruptcy (15th ed. rev.) ¶ 362.03[6] ("Under this provision, a

creditor may not take a security interest or create a ... statutory lien on property of the estate." (citing, *United States v. Gold (In re Avis)*, 178 F.3d 718 (4th Cir.1999)).

For purposes of this case, the linchpin is the time at which the lien was created or took effect, thereby vesting the Lien Claimants' rights in the funds. While both a lien on real property and a lien on funds fall under the umbrella of N.C.G. S. § 44A, STATUTORY LIENS ON REAL PROPERTY Art. 2, they are decidedly different in terms of when they become effective. A claim of lien on real property is created upon filing and perfection. N.C.G.S. §§ 44A-11 & 12. Perfection relates back to the effective date, the time at which the first material or laborer arrived on the property site being improved. N.C.G.S. §§ 44A-10 & 11. A lien on funds, however, "[i]s perfected upon the giving of notice of claim of lien upon funds in writing to the obligor ... and *shall be effective* upon the obligor's receipt of the notice." N.C.G.S. § 44A-18(6) (emphasis added). Further, the statute creating the lien, N.C.G.S. § 44A-18(1), is written in the future tense: "A first lien subcontractor ... shall be entitled to a lien upon funds which are owed to the contractor...." The text of the statute suggests that no lien arises until it is perfected by giving written notice and made effective by receipt. N.C.G.S. § 44A-18(6); *also see, Con Co., Inc. v. Wilson Acres Apartments, Ltd.*, 56 N.C.App. 661, 665, 289 S.E.2d 633 (1982)(suggesting that a lien upon funds is effective from notification).[1]

*3 *In re Excel Engineering, Inc.*, 224 B.R. 582 (Bankr.W.D.Ky.1998), presents facts similar to the present case. Louisville and Jefferson County Metropolitan Sewer District ("MSD") was the obligor on a construction project known as the Anna Marie Drive Drainage Project. MSD hired Excel as the general contractor for the project, who in turn entered into an equipment lease contract with Job Rentals. Under its contract with MSD, Excel procured an indemnity bond to hold MSD blameless against claims of unpaid subcontractors. Approximately nine months into the project, Excel filed for bankruptcy. Six days after the bankruptcy petition was filed, Job Rentals filed a statement of lien against the construction project funds of MSD. The court reasoned that § 362(b)(3) carved out an exception for perfecting or maintaining

perfection of an interest in property which existed at the time the bankruptcy was filed. *Excel,* 374 B.R. at 589. Since Job Rentals statement of lien was filed after the bankruptcy petition, it was not only prevented from enforcing the lien but was in violation of the automatic stay. *Id.*

Simply put, an interest in property of the estate against which a lien is asserted must be present pre-petition. Here, the Bankruptcy Code steps in and freezes rights where they stood at the time the bankruptcy was initiated, before the Lien Claimants accrued any property interests.

The foregoing is an expanded explanation for the court's ruling on March 18, 2009, that the claims of lien on funds were stayed under § 362 of the Bankruptcy Code.

---

Footnotes

[1] Section 44A–20 is in essence a third type of lien against real property, a "wrongful payment of claim" lien. Section 44A–20 allows a subcontractor who has given notice of a claim upon funds to obtain a lien on real property when the obligor is also the owner of the improved property and payment to another party is made after notification. Under these circumstances, the subcontractor is on the same footing as a general contractor, and perfection in this instance would "relate back." However, in the present case, since the lien upon funds noticed post-petition never took effect, the wrongful payment claim is also precluded. Furthermore, § 44A–20 requires that funds be wrongfully distributed. At the time the Lien Claimants notified the debtor, no payment had been distributed against their interest.